## Louisville and Interurban Railroad Company v. Bedford's Administrator.

(Decided June 3, 1924.)

### Appeal from Shelby Circuit Court.

1. Street Railroads—Motorman Meeting Automobile Held Not Required to Sound Gong.—Motorman meeting automobile in street is not required to sound gong or warning, where there is room for automobile to pass without injury.
2. Street Railroads—Automobile Driver Required to Keep Lookout. —Law imposes upon one operating an automobile same duty to

keep a lookout for those ahead as it does upon operator of interurban electric car.

3.  Street Railroads—Motorman May Assume Automobile Driver will Turn Out.—Motorman meeting automobile had right to assume that driver was in possession of his faculties and would see car in time to take necessary precautions for his safety and turn out.

4.  Street Railroads—Gong Only for Protection of Travelers Crossing Street.—Requirement that street car approaching intersection must sound gong is for protection of those using cross street and not those approaching on same street.

5.  Street Railroads—Automobile Driver Held Negligent as Matter of Law.—Automobile driver, traveling 15 or 20 miles per hour and colliding head-on with street car, almost stopped, was guilty of contributory negligence as matter of law, though blinded by brilliancy of light on car.

HOWARD B. LEE and WILLIS, TODD & WILLIS for appellant.

PICKETT, BARRICKMAN & KALTENBACHER, POLK SOUTH, JR., and LESLIE W. MORRIS for appellee.

OPINION OF THE COURT BY SANDIDGE, COMMISSIONER—Reversing.

On the evening of May 27th, 1921, as Sidney Bedford, a resident of Franklin county, Kentucky, was returning to his home from Louisville, while passing through the city of Shelbyville, Ky., the automobile driven by him collided with an interurban car owned and operated by appellant and Bedford was killed. Thereafter appellee, B. T. Bedford, qualified as his administrator and brought suit in the Shelby circuit court against appellant for $25,000.00 damages for the death of his intestate, which he alleged was caused by the carelessness and negligence of appellant and its agents in operating the interurban car with which the automobile driven by his intestate had collided. The trial resulted in a verdict in favor of appellee for $3,000.00. Appellant in due time filed motion and grounds for a new trial, which were overruled, and it now prosecutes this appeal.

It is urged by appellant here that the trial court, at the close of the testimony heard in the case, should have peremptorily instructed the jury to find for it, and that the failure to do so constitutes error for which the judgment should be reversed.

To determine that question we must examine the testimony heard upon the trial. It appears that Sidney Bedford, at the time of his death, was 68 years of age.

He had spent the day at Churchill Downs, the race course, at Louisville, Ky.   He was on his way from Louisville to his home at the time the accident occurred. He was then driving through the streets of Shelbyville at about 7:30 o'clock in the evening.   The interurban car of the appellant was just leaving Shelbyville for Louisville and had proceeded as far as Eighth street. The automobile which Bedford was driving was traveling on Main street in an easterly direction, while appellant's interurban was traveling on the same street in a westerly direction.   At the time the accident occurred Bedford was driving his automobile at about twenty miles an hour, while the interurban either had come to a full stop or if moving at all was moving very slowly and stopped from the impact.   The great preponderance of the evidence is that the interurban had stopped entirely before the automobile struck it.   The interurban had just crossed Eighth street and its front end was approximately ninety feet beyond the intersection of Eighth and Main streets.   Some of the witnesses testified that before reaching the intersection of Eighth and Main the gong on the interurban was sounded; some that if it was sounded they did not hear it; and some that it did not sound.   The testimony is that the interurban car was equipped with a single headlight placed at the front end of the car near the roof, and that this was a very powerful electric searchlight.   The lights of Bedford's automobile had not been turned on.   It appears that at the time of the accident Bedford was without coat, hat or shoes.   A number of witnesses were introduced for appellee who testified that the position of the headlight on the interurban car was such as to cause it to be mistaken for one of the city's arc lights and that it was so brilliant and dazzling that it so blinded those approaching it, after coming within its rays, as to make it impossible for them to see that there was an interurban car or anything beneath the light.   These are the facts in brief that were introduced in testimony upon the trial of the case below.

It is contended for appellant that no negligence on its part was disclosed by the testimony; that Bedford's death resulted from his own negligence; and that therefore the court should have peremptorily instructed the jury to find for it.   It is contended for appellee that appellant was negligent in that those operating its car did not give timely warning of its approach to Bedford by sounding the gong or blowing the whistle; and that it

was negligent by having a headlight so brilliant and dazzling as to blind Bedford as he approached it and by having its light placed at the top of the car so that it was mistaken by him for a street light, causing him to drive into the street car believing he was driving under an arc light; and that such acts of negligence on the part of appellant were the proximate cause of Bedford's death.

To begin with there is no controversy in the testimony that the collision between appellant's interurban car and the automobile driven by Bedford resulted from Bedford driving his automobile head on into the interurban. The testimony without contradiction shows that when he did so he was driving at eighteen or twenty miles an hour, while the interurban car either had come to a full stop or had slowed down so that it was virtually at a standstill when the collision occurred. The testimony is conflicting as to whether before approaching Eighth street where it intersected with Main street those operating the interurban car gave warning of its approach by sounding the gong or blowing its whistle. The motorman and the conductor both swore that the gong was sounded. Some of the citizens who saw the accident swore that the gong was sounded; some swore that if the gong was sounded they did not notice it; others state positively that it did not sound. As we see the matter, however, the question as to whether or not the interurban car gave warning of its approach by sounding the gong or blowing the whistle is of no importance in determining the question as to whether appellants agents were guilty of negligence. The interurban car and the automobile were approaching, meeting and directly facing each other on the same street. The law imposes upon one operating an automobile the same duty to keep a lookout for those ahead that it does upon the operator of an interurban car. The motorman had the right to assume that the driver of the automobile was in possession of his faculties and could and would see the car in time to take the necessary precaution for his own safety. The automobile and the interurban car had equal rights in the street. An interurban car, however, has one limitation that an automobile has not. Its path of travel is limited to the track laid for it, while an automobile can be turned from the course it is pursuing at the will of the operator. When the motorman of an interurban observes that an automobile is approaching toward him, where there is ample room on either side of his car for

the automobile to pass, he has no reason, exercising ordinary judgment and care, to believe that the operator of the automobile is in danger, for the automobile may run to within a few feet of the interurban and be turned aside and pass without injury. The requirement that a street car approaching a street crossing must sound its gong is for the protection of those using the cross street, and the requirement that the gong must be sounded to warn those on the track of impending danger is for the protection of those who are so placed that they do not see the approaching car.

In view of the circumstances of the parties at and immediately preceding the accident, we are of the opinion that, even if the motorman failed to sound the gong, he was not thereby guilty of negligence which may be held to be the proximate cause of the injury to and death of appellee's intestate.

The question is then presented as to whether or not the brilliancy and location of the headlight on appellant's interurban car constituted negligence which may be held to be the proximate cause of the injury to and death of Bedford. The theory is that the brilliancy of the light so blinded decedent that he could not see the interurban car beneath the light, and that as the accident occurred at or so near to the point where an arc light was located decedent mistook the headlight on the car for the arc light and drove under it in the belief that he was driving under an arc light and therefore was in no danger.

We quote the following from the testimony of appellee, B. T. Bedford, the administrator of deceased (direct examination, question 10):

"Mr. Bedford, do you know whether your father, Mr. Sidney Bedford, was familiar with the lights in use by the defendant company at night on top of its cars at the time of his death? Ans. No, sir, he was not familiar with them; he seldom went that far away from home in a car, in an automobile, he was very seldom out at night;" and question 3 (cross-examination): "He had passed backwards and forwards to Louisville through Shelbyville in a car? Ans. So far as I know only on one other occasion; he usually went on the train."

This is the only testimony in the record as to decedent's knowledge of the location of the street lights of Shelbyville, or of the lights in use on the interurban cars

of appellant. It is manifest from it that decedent could not have been familiar with the location of the arc lights on the streets of Shelbyville. All the testimony introduced upon the trial of the case shows that the street lights had not been turned on at the time the accident occurred. Decedent must have been aware of that fact because he had been driving some distance within the city limits of Shelbyville before the accident occurred. He was then and for several squares had been driving with a front and rear wheel of his machine between the rails of appellant's tracks. He is chargeable with notice of that fact. As he proceeded east on Main street he came within range of the powerful searchlight located on the front end and at the top of appellant's interurban car. No other light of this description was visible ahead of him throughout the length of the street in his range of vision, for the street lights had not been turned on. According to appellee's witnesses, this light was so powerful and dazzling that it blinded those driving an automobile so that it rendered invisible even the street car beneath the light. In spite of this fact intestate drove his car headlong down the street toward the approaching light at a rate of eighteen or twenty miles an hour. He did not slow down nor take any precaution to ascertain the source of the light, or whether he was in any danger. He had no regard for persons who might be using the street in danger from his driving an automobile at twenty miles an hour while in a blinded condition. The result was he crashed into the interurban car and killed himself. If he mistook the headlight for an arc light, whose mistake was it?

Under these circumstances, we are asked by appellee to say that appellant and those operating its interurban car were guilty of negligence which was the direct and proximate cause of the death of intestate, and that he was not guilty of negligence which so contributed to his death that but for which his death would not have occurred. It seems to us that merely to state the proposition suggests the answer that must be given. The evidence discloses that an automobile proceeded down the same street and passed the interurban car just immediately ahead of decedent. The driver of that car had no trouble in determining that he was meeting an approaching street car. He turned to the right and passed without trouble or injury. That automobile had not cleared the rear end of the interurban before the car

driven by decedent crashed into it.   There was proceeding down Main street immediately behind the car driven by decedent another automobile.   When within about four hundred feet of the interurban, as he testified, its driver, coming within the rays of the powerful searchlight, slowed his car to a rate of speed at which he had it under control.   He turned to the right from the tracks of appellant so as to be able to pass the car without injury to himself.   This automobile was within about two hundred and fifty feet of deceased when he crashed into the interurban and killed himself.   The drivers of those two cars seem to have exercised the degree of care required of an ordinarily prudent person when placed in exactly the same circumstances as occupied by decedent when he met his death.   The brilliancy of the light on the interurban car, if it had the effect on those approaching it that appellee's witnesses testified it did, should of itself have caused decedent to reduce the speed of his car so as to take proper precautions for the safety of others who had the right to use the streets, as well as for his own safety.   Suppose intestate had run over and killed a pedestrian while blinded by the glare of the headlight from appellant's interurban car.   Could he have relied upon that fact to relieve him from liability?   We must remember that decedent's death resulted from his driving his automobile into the interurban car; that the interurban car did not run into him.   His rushing headlong down the street at a rate of eighteen or twenty miles an hour while blinded from the light ahead was such negligence on his part as precludes his recovery herein.

In view of all the foregoing facts disclosed by the record—and about which there is no controversy in the testimony—we cannot escape the conviction that decedent's death was the result of his own carelessness and negligence, not that of appellant; and, entertaining this view of the case, we hold that the court below erred in refusing the peremptory instruction offered for appellant, both at the close of appellee's testimony and at the close of all the evidence heard in the case.

The judgment of the court below is reversed and this cause remanded for further proceedings consistent herewith.   Whole court sitting, except Judge Clay.