[No. 20789.   Department One.   January 17, 1928.]

RALPH B. KITCHEN, *Appellant,* v. TACOMA RAILWAY &
POWER COMPANY, *Respondent.*[1]

[1] STREET RAILROADS (20, 30)—COLLISION WITH VEHICLE—CONTRIBU-
TORY NEGLIGENCE OF DRIVER—QUESTION FOR JURY. The contribu-
tory negligence of the driver of an automobile in following
what appeared to be the right hand tracks of a double track
street railway, when in fact, owing to a cable line to the left,
it was a single track line for a couple of blocks, is a question
for the jury.

[2] SAME (20, 30). The contributory negligence of the driver of
an automobile in not driving off street car tracks in time to
avoid being struck by an oncoming street car, is a question for
the jury, where there was evidence that he was not conscious
of the approach of the street car until it was too late.

[3] SAME (13, 29)—COLLISION WITH AUTO—NEGLIGENCE OF MOTOR-
MAN—QUESTION FOR JURY. The negligence of a street car op-
erator, in starting his car while he had in full view an auto-
mobile approaching on the tracks, is for the jury, where there
was evidence that he did not at any time sound any gong or
signal, and he was on a single track-line on the left side of
the street in the face of approaching traffic.

Appeal from a judgment of the superior court for
Pierce county, Remann, J., entered July 18, 1927, upon
granting a nonsuit in an action for injuries sustained
in a collision of a street car with an automobile.
Reversed.

*P. L. Pendleton* and *W. G. Palmer,* for appellant.
*F. D. Oakley* and *L. L. Thompson,* for respondent.

PARKER, J.—The plaintiff, Kitchen, seeks recovery
of damages alleged as the result of the negligent opera-
tion of one of the street cars of defendant railway com-
pany.  Trial proceeded in the superior court for Pierce
county, sitting with a jury.  At the conclusion of the

[1]Reported in 262 Pac. 961.

evidence introduced in behalf of Kitchen, and also at the conclusion of all of the evidence introduced in behalf of both parties, counsel for the railway company, by appropriate motions, challenged the sufficiency of the evidence to sustain any recovery by Kitchen. This latter challenge was sustained by the trial court, and final judgment was rendered denying relief to Kitchen, the court taking the case from the jury and so deciding as a matter of law. From this disposition of the case in the superior court, Kitchen has appealed to this court.

The only questions here presented are as to the sufficiency of the evidence to call for the submission of the questions of the railway company's negligence, or Kitchen's contributory negligence, as the proximate cause of the damage suffered by him. The evidence, in some important particulars, is in conflict, but we think the facts, as the jury might have viewed them, may be fairly summarized as follows: South K street runs north and south in Tacoma, being intersected at right angles by South 11th street, South 12th street and South 13th street. The railway company maintains a cable street car track on which it runs its cable street cars west on 11th street, turning south on K street, and turning east on 13th street. The portion of the cable street car track along K street is east of the center line of K street, and all cars running thereon run south. It does not form any part of the electric street car double track line running on K street, north of 11th street and south of 13th street, maintained by the railway company. While this electric line is double tracked north of 11th street and south of 13th street, it is a single track line from 11th street to 13th street, and is there west of the center line of K street, on which street cars run both north and south.

Thus, there is on K street from 11th to 13th streets that which, to a casual observer, appears to be a double track street car line. A stranger, so viewing these tracks and not having seen any cars running on these tracks, might readily assume that cars would only run south on the west track. The property fronting on both sides of K street between 11th and 12th streets is occupied wholly by business buildings and constitutes a business center of considerable importance. The street is well lighted there at all times of night.

At the time in question, shortly after midnight, Kitchen drove his Studebaker roadster west on 11th street. He was taking two ladies to their homes from a party where they all had spent the evening. He had never been in that part of the city before and was unadvised of the fact that street cars ran both north and south on the west track. When he reached K street, he turned south along that street, intending to turn west on 12th street towards the homes of his lady passengers. He drove along the west side of K street, with the left wheels of his automobile between the rails of the west track; that is, he was driving thus on his right hand side of the center line of the street, proceeding, as he thought, in the same direction as the running of all street cars on the west track. He so drove along that track because, as he and one of the ladies testified, there were some automobiles parked along the west curb of the street; though there was, by the exercise of a greater degree of care, room to drive along west of the street car track without coming into contact with the parked cars or the overhang of any street car that might be running upon that track.

When he turned south from 11th street into K street, he observed a street car, as he thought, standing at about 12th street, on the track along which he was

13—146 WASH.

driving. The motorman operating the street car also saw him approaching in his automobile, nearly the whole length of the block between 11th and 12th streets. Kitchen assumed, as the jury might have concluded he had reason to assume, that the street car was going to proceed south in the same direction in which he was driving. When he arrived at a point some fifty feet north of 12th street, he suddenly became conscious of the fact that the street car was moving towards him. No bell or warning sound was given from the street car evidencing its starting or calling his attention to the danger he was in by proceeding along the west track. He was proceeding slowly, evidently not over fifteen miles per hour. The street car was proceeding probably at a somewhat slower speed. He immediately tried to turn off the track to the west, but before he succeeded in doing so, the overhang of the street car struck his automobile on the left side back of its middle, throwing its rear end to the west and causing its front end to swing back and come into violent contact with the side of the street car. Thus, there was caused damage to his automobile and some personal injury to himself.

[1] The learned trial judge seems to have been of the opinion that it should be decided, as a matter of law, that Kitchen was guilty of contributory negligence which became the proximate cause of his damage, in that, without excuse, he drove along K street with the left wheels of his automobile between the rails of the west track, and thus negligently placed himself in a position from which he was unable to finally extricate himself upon the approach of the street car. We have the testimony of Kitchen and one of the ladies riding with him that there were automobiles parked along the west curb, though it may be conceded that there was other seemingly weighty testimony to the contrary.

True, there was room for Kitchen to drive between such parked automobiles and the side of a street car which might be passing at that time. It is, at all events, plain from the evidence that for Kitchen to have driven along wholly west of the track, he would have come very close to such parked automobiles, necessitating greater care and watchfulness on his part as he proceeded; that is, aside from his possible meeting of a street car upon the track, he was driving along a safer course than along a course wholly west of the track. It has been several times held by this court that it is not negligence, as a matter of law, to drive upon and along a street car track proceeding in the direction the street cars are running along such track. See *McLaughlin v. Tacoma R. & P. Co.*, 127 Wash. 211, 220 Pac. 770, and our prior decisions therein cited.

Now, was Kitchen justified in proceeding along the west track, upon the assumption that he was driving upon that track in the same direction all street cars were running thereon? If the jury would have been justified in answering this inquiry in the affirmative, then, manifestly, it should not have been decided as a matter of law that Kitchen was negligent of his own safety in so proceeding. Plainly, we think the apparent physical double street car track situation there was such as to warrant the jury in concluding that Kitchen, a stranger in that neighborhood, was justified in assuming that all street cars were running south along the west track, the direction in which he was traveling thereon.

True, a close inspection of the street car track situation at 11th and K streets and 13th and K streets would have revealed to Kitchen the fact that the electric street cars probably ran both north and south on the west track between 11th and 13th streets; and the taking of very close notice of the east track might

have also been, in some measure, a warning to Kitchen that the electric cars did not run upon that track at all. But it must be remembered that Kitchen had never been there before, and as things appeared to him, a casual observer, he had no occasion to observe the situation further than there was brought to his attention the fact that he was driving on and along the right hand track of a double track line of street railway. Clearly, the jury would have been warranted in finding that he was justified in proceeding upon that assumption. Of course, everybody knows that upon a double track line of street railway the street cars run upon the right hand track.

[2] It thus appearing that the jury might absolve Kitchen from negligence in driving along the west track, as he did, this brings us to the question of his negligence in failing to drive off the track to the west in sufficient time to escape collision with the street car. It seems to us there is little room for argument that his contributory negligence at that point can be decided as a matter of law. The jury might well believe that he was not conscious of the approach of the street car, and had no reason to be conscious of the approach of the street car, until it was too close for him to escape collision with it, as the collision occurred; not thinking of the possibility of the street car approaching, as the jury might well believe he was justified in thinking. It is easy to see how the street car came within what we may call striking distance before he was bound to notice and be able to extricate himself from the situation in which he found himself and which the jury might well have believed was not the result of his negligence.

[3] While the trial court seems to have decided the case against Kitchen upon the theory of his contributory negligence alone, it is argued in behalf of the

railway company that, in any event, its street car was
not negligently operated. We do not think it can be
so decided as a matter of law. It seems rather con-
vincingly proven by the evidence that, upon starting
the car and in its approach towards Kitchen's oncom-
ing automobile, its operator did not at any time sound
any gong or .signal of starting or approach, although
he could plainly see Kitchen driving towards him upon
the track, and, of course, knew that all vehicle traffic
on·that side·of the street moved toward the south, the
opposite direction in which the car was moving. Thus,
there was a traffic situation of an extraordinary char-
acter, calling for an unusually high degree of care on
the part of the operator of the street car.

It is true, that the failure to sound a horn or signal
of the starting or approach of a street car is not
actionable negligence, where the person complaining
of such want of signal would not have thereby gained
any greater knowledge of the starting or approach of
the street car than he already possessed by seeing.
*McClelland v. Pacific Northwest Traction Co.*, 138
Wash. 527, 244 Pac. 710. This view of the law is here
invoked by counsel for the railway company; the argu-
ment being that Kitchen could see the car, its starting
and approach to him, and was as well informed there-
of as he would have been had a sounding signal been
given. This would probably be true, if he had been
approaching a street car conscious of the fact that he
was running in the opposite direction to that in which
the street car was running. But such is not this case,
as the jury might have viewed the situation; that is,
from his viewpoint the jury might have found that he
was fully justified in assuming that the street car was
going to proceed, or was proceeding, in the direction
he was driving. Of course, from Kitchen's viewpoint,
the sounding of the horn or signal for the starting of

the car when it was at 12th street would indicate to him that the car was going to proceed south in the direction in which he was going, and hence a signal at that particular time would be of no consequence to him. But as the car approached him, there was manifest occasion for the motorman to more vigorously, and possibly continuously for some space of time, sound a signal of the approach of the car. Under all the circumstances, we think it should not be decided, as a matter of law, that there was failure of proof of the negligent operation of the street car or that such negligence was the proximate cause of Kitchen's damage. Counsel for the railway company have ingeniously and rather persuasively argued that Kitchen should not recover; and, were we the triers of the facts, we might be inclined to agree with the conclusion they seek to establish; but we think it should not be so decided as a matter of law in this case. We are of the opinion that the evidence calls for the submission of the question of the railway company's liability to Kitchen, both upon the question of its negligence and his contributory negligence.

The judgment is reversed, and Kitchen is awarded a new trial.

MACKINTOSH, C. J., MITCHELL, FRENCH, and TOLMAN, JJ., concur.