## Public Service Co. of Indiana v. Schneider's Administrator (two cases).

(Decided May 7, 1935.)

GORDON, LAURENT & OGDEN for appellant.

BLAKEY, DAVIS & LEWIS, A. J. DEINDOERFER and JOHN KILGARRIFF for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appeals are from two judgments of $2,995 each, rendered in the joint trial of suits for damages by the administrator of the estates of Albert Schneider and his wife, Margaret Schneider, on account of their respective deaths resulting from the headon collision of an automobile with a street car of the appellant. The accident occurred in New Albany, Ind., about 9 o'clock in the evening of March 6, 1932. The verdicts were for the amounts claimed in the respective petitions.

The specific negligence charged is that the defendant operated its car "with inadequate lights and without giving any warning of its approach" and caused it to run into and against the automobile in which the decedents were riding.

Schneider's brother and a lady, who were riding in the back seat of the automobile, testified that it was going south about 20 miles an hour and that they did not see the street car until it loomed up in front an instant before the collision, although the automobile had good headlights burning and there was nothing to obstruct the view as it approached the point of the accident. Schneider, the driver, was talking with others in the automobile at the time. They heard no bell or gong and say that it did not sound. The motorman, introduced by the plaintiff, testified that there was little traffic and he was on time, so he was proceeding leisurely. He noticed the automobile coming down the hill and when he saw it on the track, after passing the curve or kink in it (to be described), he put his foot on the automatic gong and it started and continued sounding. When he saw the machine was not getting off the track, he applied the brakes and put the car in reverse, there-

by locking the wheels. He thinks his car had come to a complete stop when the automobile struck it head-on, just a little to the left of center.

The defendant introduced four passengers on the street car. Three of them, who were near the front, saw the automobile coming and collide with the car. The street car had not been traveling fast, and if it had not come to a complete stop, it had practically done so. Two of these passengers had had their attention attracted by the sounding of the gong and the stopping of the car just before the collision.

An excellent engineer's map and perspective drawing give us a graphic presentation of the situation, but it is not easy of clear description. The accident occurred on State street, 30 or 40 feet south of a bridge over a creek. At a point about 160 feet north of the place of collision, the single car track swerves in a gradual compound curve to the west a distance of 3 feet to accommodate it to the narrowing of the roadway on the bridge and south of it, thereby remaining approximately in the center. Thus, the space between the west rail and the street curb is narrowed from 17 feet 6 inches to 14 feet 6 inches. If a vehicle moving south runs close alongside the outside rail north of the jog in the track and continues in a straight line after passing the curvature, it will be astride the west rail.

Along there the street lamps are on 12-foot standards, spaced 300 feet apart, but since they are staggered, there is such a light every 150 feet on alternate sides. There are also lights on each end of the bridge balustrades.

The street car was equipped with a 9-inch headlight in the center of the front. The lens was amber, with the ultra-violet rays chemically eliminated for the purpose, as proved by the defendant, of securing better projection through mists and of avoiding the blinding glare upon those meeting the car as well as the reflected glare upon the motorman. There were smaller lights near the upper corners, and near each side of the car, about the same height of the amber lamp, there were small lamps covered by hoods which shed the lights down across the front of the car and on the ground. Upon this occasion it was shown by the defendant's evidence that at least one curtain back of the motorman was up, thus revealing the lights inside.

The plaintiff presented evidence showing that optical confusion was created by these street lights and car lights and that a driver of an automobile approaching from the north could not tell there was a street car present until he was right on it. The witnesses themselves were somewhat confused, and widely differed as to the comparison of the street car lights with the street and automobile lights.

The defendant proved that the character of amber light on the street car was in general use on cars throughout the country and was the most effective method of lighting. The appellee, not denying this, argues that, while such may be sufficient to meet general or ordinary conditions, under the peculiar local situation it was negligence not to have lighted the car in some other way in order that it might more readily have been identified and its headlight distinguished from the street lighting, thereby avoiding the confusion.

The accident happened in Indiana, as we have stated, and since there is neither pleading nor proof as to the applicable law of that state, the case must be determined by the common law of Kentucky. Dunning v. Gibbs, 213 Ky. 81, 280 S. W. 483; Louisville & N. R. Co. v. Southern Ry. Co., 237 Ky. 618, 36 S. W. (2d) 20.

We cannot escape the conclusion that there was no negligence on the part of the street car company and that the driver of the automobile carelessly drove his machine directly into the street car. If he was bewildered by the lights, it cannot be said that the defendant was responsible. The same condition as to lights exists in every city, although the realignment of the car track undoubtedly had a tendency to throw a motorist not observing care off his guard. Nevertheless, Schneider had driven 160 feet or more on the car track straight ahead into the approaching street car. He was not a stranger to the conditions.

In Louisville & Interurban Railroad Co. v. Bedford's Adm'r, 203 Ky. 583, 262 S. W. 941, a motorist who may have mistaken a bright headlight at the top of an approaching interurban car for a street light suspended over the center of the street drove into the car and received injuries which resulted in his death. We held that the company was not liable under the claim that it had created the confusion by having thus placed the light on its car. It was said that the very brilliancy

of the light should of itself have caused the decedent to take proper precautions for his own sake. The appellee would distnguish that case from this by noting that in it the street lights of the city had not been turned on, and hence that the dazzling car light was the only one visible, and there could have been no confusion, and, further, that the automobile light had not been turned on and there was no grade or jog in the track, hence that there was no combination of optical confusion and irregular car track such as caused Schneider to drive inadvertently along the track. We cannot see that this difference in the facts makes any substantial difference in the matter of negligence.

Assuming that Schneider, while north of the curve on the track, was outside of it and that he continued in a direct course 160 feet or more on the track before the collision, it cannot be said that his bewilderment (which is wholly assumptive), due to the multiplicity of lights, is chargeable to the defendant as caused by its negligence. It is undisputed that in using the amber headlight the company had equipped the car like other well regulated and well equipped street cars operated throughout the county were lighted and these had usually been found to be adequate. It had thus discharged its duty in this respect. 60 C. J. 380, 391; Currie v. Consolidated Ry. Co., 81 Conn. 383, 71 A. 356; Spoatea v. Berkshire St. Ry. Co., 212 Mass. 599, 99 N. E. 467, 42 L. R. A. (N. S.) 876.

Automobiles and street cars have equal rights in the street. It is as much the duty of one driving an automobile on car tracks to keep a lookout for street cars as it is for a motorman to keep a lookout for automobiles. Furthermore, the motorman may assume, until the danger of collision is imminent, that the driver of an approaching automobile will observe his duty to leave the track in time to permit the passage of the car. If he does not, however, and collision is impending, the motorman must use such care to avoid it as may be commensurate with the circumstances. Frankfort & Versailles Traction Co. v. Hulette, 106 S. W. 1193, 32 Ky. Law Rep. 732; South Covington & Cincinnati St. Ry. Co. v. Besse, 108 S. W. 848, 33 Ky. Law Rep. 52, 16 L. R. A. (N. S.) 890; Louisville Ry. Co. v. Birdwell, 189 Ky. 424, 224 S. W. 1065; Louisville & I. R. Co. v. Bedford's Adm'r, supra; Smith v. Ohio Valley Electric Ry. Co., 223 Ky. 311, 3 S. W. (2d) 604; Rohl v. United

Electric Railways Co., 50 R. I. 478, 149 A. 375; Alabama Power Co. v. Bass, 218 Ala. 586, 119 So. 625, 63 A. L. R. 1, annotations page 18; Huddy's Automobile Law (9th Ed.) Vol. 7-8, pp. 189, 198, 204. Unusual or extraordinary conditions may impose the duty of exercising greater care on the part of the motorman, as being commensurate with the increased danger. Huddy, Vol. 7-8, p. 201; 63 A. L. R. 22; pertinently, Kitchen v. Tacoma Ry. & Power Co., 146 Wash. 383, 262 P. 961, there digested. If the conditions here be so regarded, we do not think the plaintiff proved any failure of the company to observe due care. It must be remembered that the same unusual conditions required greater care upon the part of the driver of the automobile and that he was chargeable with such knowledge as he should have discovered in the exercise of reasonable care. He had plenty of room to pass the street car, and its presence should have been apparent. Where one with an unobstructed view drives an automobile directly into a street car, it is hard to clear himself from the imputation of negligence. Typical cases of this sort, some of which are very pertinent, are given in the annotations in 63 A. L. R. 64.

It seems to us the trial court erred in failing to sustain the motion for a directed verdict for the defendants.

The judgments are reversed.