## Hauser v. Public Service Co. of Indiana.

### Tanner v. Same.

### Craig v. Same.

(Decided Dec. 17, 1937.)

JAMES S. SHAW, MADDOX PARMALEE and FORD FISHBACK for appellants.

GORDON, LAURENT, OGDEN & GALPHIN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

John Hauser, William Craig, and Helen Tanner brought separate suits against the Public Service Company of Indiana to recover for personal injuries. The cases were tried together, and at the conclusion of the evidence for plaintiffs the court directed a verdict in favor of the defendant. Plaintiffs appeal.

State street is one of the main thoroughfares leading into New Albany, Ind. There is a bridge which is a part of the street over Falling Run Creek. There is a slight curve in State street north of the bridge, and what is described by the witnesses as a jog in the car tracks. The curve begins 90 feet north of the bridge and runs north, curving to the east over a 70-foot curve for about 3 feet. From the point where the curve begins the street car tracks run in a straight line to a gasoline station south of the bridge, a distance of about 325 feet. The paved roadway was about 40 feet in width to a point a short distance north of the creek. The street is narrower as it approaches the bridge, and is about 30 feet in width between the bridge railings. The west rail of the car track is 13 feet 6 inches from the west side of the bridge, and the east rail of the car track 15 feet from the east rail of the bridge. South of the bridge the distance of the west rail of the car track to the west curb or gutter is 15 feet 4 inches. In addition to this, the gutter itself is from 4 to 5 feet wide.

Hauser, Craig, and Miss Tanner were friends and lived in Louisville. On the day of the accident they went in Hauser's car to the home of a man by the name of Egler at St. Mary's, Ind. After remaining there a while they started for Louisville. They reached New Albany about 8 o'clock. Hauser was driving and Miss Tanner was seated between him and Craig. On reaching a point about 190 feet south of the bridge there was a head-on collision between the automobile and a street car of the Public Service Company of Indiana, and the occupants of the car were all injured.

The main question is, whether there was sufficient evidence of negligence to take the cases to the jury? Appellants insist that the case should have gone to the jury on excessive speed, failure to sound the gong,

insufficient lights on the street car, and the negligence of the motorman leaving his post of duty.

There was no attempt to prove the law of Indiana, where the accident occurred, and in the absence of any proof on the subject it will be presumed that the common law prevails there and it is the same as the common law of Kentucky. Louisville & Nashville Railroad Company v. Southern Railway Company, 237 Ky. 618, 36 S. W. (2d) 20. The evidence discloses that the street car stopped within a few feet after the collision, and the only evidence of speed is that it was going between 20 and 25 miles an hour. As the street was free of traffic, and the street car was going directly toward the automobile, it hardly can be said that the speed was excessive, or that it contributed in any way to bring about the accident. Appellants say that they did not see the street car, and the result would have been the same if the speed of the street car had been 10 or 15 miles an hour.

But the occupants of the car say that they did not hear the gong sounded, and one witness says that it was not sounded, and it is claimed that the case should have gone to the jury on that question. We have ruled that, although an automobile and a street car have equal rights in the street, the street car's path of travel is limited to the track, and an automobile may be turned from its course. Consequently, when the motorman observes an automobile approaching where there is ample room for the automobile to pass, he may act on the assumption that before reaching a place of danger the automobile will turn aside and pass without injury. We have also ruled that the duty to sound the gong is for the protection of those using cross streets, and those who are so placed that they do not see the approaching car, and not for those who are approaching the street car on the same street. Louisville & I. R. Co. v. Bedford's Administrator, 203 Ky. 583, 262 S. W. 941. Here the automobile was approaching the street car, and there was plenty of room to pass. We therefore conclude that the failure to sound the gong was not negligence in the circumstances presented. Louisville & N. R. Co. v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B, 471.

We come next to the question of lights. It will not be necessary to set forth the evidence concerning

the confusion of lights on the street, as counsel for appellant very properly concedes that no recovery can be had on that account. Public Service Company of Indiana v. Schneider's Adm'r, 260 Ky. 334, 85 S. W. (2d) 676, 102 A. L. R. 712. It is clearly shown that at the time of the accident the street car had one main headlight and two small cowl lights with shields over them. The only witness who was present at the time of the accident, and testified concerning the lights on the particular car, was Harvey McCormack, a colored truck driver. At the time of the collision he was standing in front of 620 State street, and he says that there were only three lights on the street car in front, "and they was awful dingy." He would not call the light a bright light. He would call it more of a dingy yellow, more of an orange color. It didn't shine bright. He had not ever noticed that the two lights on the right and left-hand side of the car threw any light forward at all. "It looked awful dark to me." The other witnesses testified generally as to the kind of lights on street cars at that time. According to Raymond Deweese, the light in front of the street car at that time was a very dim light—so dim that he did not recollect the others ever being lit. Lucy Duerner testified that you could not see the main light until you were right on it. Walter Schneider says that the street cars were very hard to recognize on account of the lights, and that one could hardly see the large amber light on the front of the car. Frank Bowman testified that the front light on the street car in November, 1933, was a dull light—doesn't really throw one. It was a kind of yellow light. According to Irwin Welch, the beam of the large light would throw no more than the width of the room, if it threw that far. The headlight was a hazy light. The other lights you could not see for any distance. You had to be up on them to see them. He added, however, that if a person is coming in the opposite direction, and there is no other traffic, the light can be detected all right. According to Roy W. Darneal, the side lights threw no light at all. Where there were other lights you would not notice them until you got within three or four feet. Glenn Rusk testified that you could see the light, but it did not throw any beam of light. The lights reminded him of the moon at night. There was no glare. All the light you could notice at any distance was the main headlight. On a dark night without other lights

around a man looking toward the street car could see the light for quite a long distance. In addition to this, the three plaintiffs testified that they did not see the street car.

It is true that the credibility of the witnesses is for the jury, and that as to the amount of evidence necessary to take a case to the jury the "scintilla" rule prevails, but that rule requires that the evidence be of relevant consequence, possessed of the quality of proof, and having fitness to induce conviction. Clark v. Young's Ex'x, 146 Ky. 377, 142 S. W. 1032. It is also the rule that, where the facts testified to are utterly at variance with well-established and universally recognized physical laws, and therefore inherently impossible, the courts may refuse to submit the case to the jury. Louisville Water Company v. Lally, 168 Ky. 348, 182 S. W. 186, L. R. A. 1916D, 300; Louisville & Nashville Railroad Company v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B, 471. Another statement of the rule is that, where the evidence is so opposed to common sense or common experience that reasonable minds cannot entertain different opinions about it, it should be withdrawn from the consideration of the jury. Davis v. Judson, 159 Cal. 121, 113 P. 147. Analyzing the foregoing evidence, we have the following situation: The only witness present at the time of the collision says that there were three lights on the street car in front, but "they was awful dingy." He also said that the light was more of a dingy yellow, more of an orange color. It didn't shine bright. "It looked awful dark to me." Other witnesses described the headlight as a kind of yellow light, or hazy light. One said the lights reminded him of the moon at night. There was no glare. Others said that all the light you could notice at any distance was the main headlight. There was further evidence that the headlight did not throw a beam, and you could not see the lights until you got within a short distance of them. We also have the statement of the three plaintiffs that they did not see the street car. It is undisputed that the car had on it one main headlight and two cowl lights. It is not contended that these particular lights were defective, but only that the lights on the cars at that time were insufficient. Very bright lights have a tendency to blind approaching persons, and the very purpose of the amber headlight is to avoid the glare and at the same time furnish a light that can

be readily seen. It is true that the amber headlight is of an orange color, looks like the moon, and is a dingy light compared with the more brilliant headlight, but to say that such a light cannot be seen until you are right on it is equivalent to saying that you cannot see the moon when there are no clouds between. As the car collided with the automobile in which plaintiffs were riding, and they could not have failed to see the car had they been looking, their evidence that they did not see the car adds nothing to the case. In short, the evidence is so utterly at variance with well-established and universally recognized physical laws that it is without any probative effect whatever.

But it is said that the case should have gone to the jury on the ground that the motorman was negligent in leaving his post of duty and failing to exercise ordinary care to stop his car and avoid the collision. The basis of this contention is the evidence of Harvey McCormack, who testified that when he got over there the motorman was standing a few feet back in the car, and who also said that he did not see the motorman run from his post, but the motorman was back in the car when he got there. This evidence does not tend in the least to show that the motorman had left his post of duty. The witness was several feet away, and necessarily a few seconds elapsed between the collision and the time of his arrival on the scene. In the meantime the motorman may have stepped back and have gone to the place where he was seen. Then, too, it must not be overlooked that the motorman had the right to assume that the approaching automobile would turn out of the pathway of the street car, and was not required to act until it became reasonably apparent that the driver of the automobile was unaware of the approach of the street car, and in the circumstances here presented it was then too late to avoid the collision.

There is the further contention that the court erred in refusing to permit three witnesses to testify to a previous accident near the same place where the accident in this case occurred, and in refusing to permit Roy Darneal to testify that he requested the defendants to put a brighter light or more light on his street cars. If the recovery had been sought on the ground that the accident was due to the physical conditions prevailing at the place of the accident, evidence of a prior accident due to such conditions might be admissible for the pur-

pose of showing appellee's knowledge of the conditions. But that is not the situation. Recovery was sought on the ground of negligent operation of the street car, and clearly the evidence of a prior accident that might have been due to the contributory negligence of others who were injured was not admissible for the purpose of showing negligence in this case.

It follows that the peremptory was proper.

Judgment affirmed.