## Weidner v. Otter, et al.

(Decided September 26, 1916.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. Municipal Corporations—Automobiles—Duty of Operator at Street Crossings and Other Places.—It is the duty of the operator of an automobile at street crossings as well as at other places used by pedestrians, to keep a lookout, to run his machine at a reasonable rate of speed, and to give warning of its approach.

2. Municipal Corporations—Street Crossings—Duty of Pedestrian at. —It is the duty of a pedestrian in crossing a street used by automobiles and other vehicles to exercise such care as a person of ordinary prudence would exercise for his own safety in crossing a street at such a crossing, considering the amount and kind of vehicle traffic thereat. He is not obliged as a matter of law to look or listen for the approach of automobiles in order to keep out of their way, and whether he has exercised the required degree of care is for a jury to say under all the facts and circumstances proven in the case.

3. Municipal Corporations—Streets—Reciprocal Duties of Pedestrians and Automobilists at Crossings.—The pedestrian and the automobilist have equal rights in streets that are set apart for the use of vehicles as well as for the accommodation of foot-travelers, and each has rights that the other is bound to respect.

EDWARDS, OGDEN & PEAK for appellant.

HUMPHREY, MIDDLETON & HUMPHREY for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On the afternoon of June 10, 1913, Dr. Weidner was injured in a collision with an electric automobile owned and operated at the time by Mrs. Otter. The collision occurred at the intersection of Third and Chestnut streets, in Louisville, Kentucky, at a time when Mrs. Otter was driving her machine south on the west side of Third street, and Dr. Weidner, in company with his friend, Mr. Kendall, was crossing Third street at the intersection on his way west on Chestnut street. The place at which Dr. Weidner and his friend were crossing Third street was the place at which pedestrians going either east or west on Chestnut street ordinarily crossed Third street, and Mrs. Otter was driving out Third street on the west side of the street, running her machine in that part of the street usually taken by persons going south on Third street in automobiles or other vehicles.

The evidence tends to show that as Dr. Weidner and his companion were crossing Third street they were engaged in conversation, and that neither of them looked either north or south on Third street for the approach of automobiles or other vehicles, or gave any unusual attention to the traffic on the street. They were simply walking across the street at the regular crossing as many other people do, engaged in conversation and not on the lookout for automobiles or other vehicles that might be using the street.

There was also evidence tending to show that as Mrs. Otter approached Chestnut street she slowed down the speed of her machine but did not ring a bell or sound a horn or give any other warning or notice of the approach of the machine, and as Third street at this place is covered with asphalt the movement of the electric machine was accompanied by little, if any noise.

The evidence for Mrs. Otter further tended to show that Dr. Weidner was not struck by the front of the

machine but that he walked into the side of it. But, however, this may be, the evidence is undisputed that both Dr. Weidner and his friend, Mr. Kendall, were knocked down by the collision and Dr. Weidner's leg was broken and he was otherwise injured.

On the trial of the case motions for a directed verdict on behalf of Mrs. Otter were made at the conclusion of the evidence for Dr. Weidner, and after all the evidence was in, but these motions were, as we think, properly overruled by the trial judge who permitted the case to go to the jury, with the result that the jury found a verdict in favor of Mrs. Otter, and Dr. Weidner appeals.

The principal ground for reversal relied on is that the trial judge erred in the instruction given on the subject of the contributory negligence of Dr. Weidner, although it is further complained that the instruction submitting to the jury the duty Mrs. Otter was under in operating at this time and place her machine did not correctly submit the law applicable to the case.

On the subject of the care required of Mrs. Otter, the court told the jury that, "It was the duty of Mrs. Otter, driving the machine, as she approached the intersection, to exercise ordinary care to avoid collision with any person who might be upon the street, and that duty included the duties of keeping a lookout, and of giving reasonable and timely warning of the movement of the machine by the usual customary signals. If you believe from the evidence that she failed to observe any one or more of those duties, and that by reason of such failure, if there was any, the car collided with the plaintiff, Dr. Weidner, and he was thereby injured, then the law is for the plaintiff, as against Mrs. Otter, and you should so find. But, unless you so believe from the evidence, then the law is for the defendant, Mrs. Otter, and you should so find."

On the question of contributory negligence the jury was instructed that "It was the duty of the plaintiff, Dr. Weidner, to exercise ordinary care for his own safety, and, to that end, to exercise his faculties of sight and hearing, in order to discover the approach of any vehicles upon the street and avoid collision therewith. If you believe from the evidence that he failed to exercise that degree of care, and that by reason of such failure, if there was any, he so helped to cause or bring about the collision with the automobile and his conse-

quent injury, as that but for such failure on his part, if there was any, the collision would not have occurred and he would not have been injured, then the law is for the defendant, Mrs. Otter, and you should so find, even though you should believe from the evidence that Mrs. Otter failed to observe some one or more of the duties mentioned in the second instruction.''

As applied to the facts of the particular case the instruction pointing out the duty Mrs. Otter was under described correctly the care to be exercised by her, because there was no evidence that she was driving the machine at a high or unreasonable rate of speed. If, however, there had been evidence tending to show that the machine was being driven at a high or unreasonable rate of speed, the court should have further told the jury that it was the duty of Mrs. Otter in approaching this crossing to operate her machine at a reasonable rate of speed and to have it under such control as that she might by the exercise of ordinary care avoid a collision with any person who might be upon the street. In other words, we think that it is the duty of the operator of an automobile, when approaching a street crossing used by pedestrians, to keep a lookout, to give reasonable and timely warning of the movement of the machine by the usual and customary signals, and to operate it at a reasonable rate of speed considering the amount of foot and vehicle traffic at the crossing, and the jury should be instructed as to all these duties when the facts show, that there was a lack of warning or lookout or that the machine was operated at an unreasonable speed.

Although this case is confined to the reciprocal duties of pedestrians and automobilists at street crossings, we may further here add that the care that the operator of an automobile must exercise is not confined to street crossings but exists at all places, varying in its application with the foot and vehicle traffic conditions that arise from time to time in the use of the highways and streets. In short, the degree of care in their operation must be at all times and places commensurate with the danger to other travelers attending the use of these vehicles, and carries with it at all times and places the duty of lookout, warning and reasonable speed.

These rules impose a high degree of care on the operators of these machines, but it is not too great when the injury and damage they are capable of inflict-

ing and the number of fatal accidents which accompany their use are taken into consideration. An automobile is not an inherently dangerous vehicle, but in the hands of a careless or reckless operator—and there are many of them—it becomes exceedingly dangerous; and so, for the protection and safety of pedestrians as well as other persons using and having the right to use the streets and highways, in ordinary vehicles, it is necessary that a higher degree of care should be exacted from those using motor vehicles than from persons using vehicles propelled by horses; Deputy v. Kimmell, 73 W. Va. 595, 51 L. R. A. (N. S.) 989; Tudor v. Bowen, 152 N. C. 441, 30 L. R. A. (N. S.) 804.

After setting down these few observations so that the instruction under discussion may not be used as a standard without inserting the clause stating the duty with respect to speed when the facts authorize a direction upon this point, we pass now to a consideration of the instruction on the subject of contributory negligence.

It will be observed that in this instruction the court told the jury that the exercise of ordinary care on the part of Dr. Weidner required that, ''He should exercise his faculties of sight and hearing in order to discover the approach of any vehicles upon the street and avoid a collision therewith,'' and the complaint of counsel for Dr. Weidner is directed to that part of the instruction we have quoted, the argument being that it imposed a higher degree of care than the law requires a pedestrian to exercise. We think this objection to the instruction well taken, for, in putting on Dr. Weidner the duty of exercising his faculties of sight and hearing for the purpose of discovering the presence of vehicles on the street, the court, in effect, said to the jury that it was his duty to look and listen for the approach of vehicles in order that he might keep out of their way, because he could not very well have exercised his faculties of sight and hearing for the purpose of discovering the presence of vehicles without both looking and listening for their approach. We are, therefore, confronted by this proposition: Is it necessary that a pedestrian, in crossing a street that is used by automobiles and other vehicles, should look and listen for their approach so that he may be able by looking and listening to avoid being injured by them?

It is, of course, elementary doctrine that every per-
son using a street which other persons and vehicles have
a right to and do use, must, in its use, exercise care for
his own safety. But this does not mean that in crossing
a street at a place set apart for the passage of foot-
travelers the pedestrian must constantly be on the look-
out to keep from being run over by automobilists, who
have no greater rights in the street than he has. All
that the pedestrian is required to do in crossing a street
at an established crossing is to exercise such care as
a person of ordinary prudence would exercise for his
own safety in crossing a street at such a crossing, con-
sidering the amount and kind of vehicle traffic thereat,
and the jury should have been so instructed in place of
the direction contained in the quoted excerpt from the
instruction given: Hennessey v. Taylor, 189 Mass. 583,
3 L. R. A. (N. S.) 345; Gerhard v. Ford Motor Co., 155
Mich. 618, 20 L. R. A. (N. S.) 232; Baker v. Close, 204 N.
Y. 92-38 L. R. A. (N. S.) 487; Deputy v. Kimmell, 73 W.
Va. 595, 51, L. R. A. (N. S.) 898; Fulkerson v. Akers,
145 Ky. 187; Baldwin's Admr. v. Maggard, 162. Ky., 424.

Of course, what is ordinary care as we have defined
it on the part of the pedestrian depends on the character
of the crossing and the number and kind of vehicles that
use it, as well as other attending circumstances. But all
this is matter to be determined by the jury in consider-
ing whether the pedestrian exercised the care we have
described. What is ordinary care is a relative term, de-
pending upon the facts and circumstances of each par-
ticular case in which it is endeavored to ascertain
whether ordinary care was exercised. In certain states
of case the exercise of ordinary care might, in the esti-
mation of the jury, require the pedestrian to stop and
look and listen or to stop, or look, or listen; while at
other crossings a foot-traveler might be in the exercise
of ordinary care although he did not take any pains
to discover the approach of vehicles. In short, he must
at all times exercise a degree of care corresponding with
the condition of traffic in the street at the time of the
use under investigation, and whether he has done this
or not is for the jury to say under the facts and circum-
stances of the case after being advised by the court as
to the measure of care required.

It is, too, a familiar rule in the law of negligence
that the care to be exercised must correspond with the

capacity to injure, and, accordingly, the automobilist. is under a much higher degree of care to look out for the pedestrian than the pedestrian is to look out for the automobilist. The pedestrian cannot merely by the manner in which he uses the street harm the automobilist, but the automobilist may by his manner of using the street kill the pedestrian; and so, generally speaking, the pedestrian is only required to look after his own safety and not the safety of others, while the automobilist must look out for the safety of the pedestrian rather than his own.

It is true, as we have said, that in a general sense the pedestrian and the automobilist have equal rights in streets that are set apart for the use of vehicles as well as the accommodation of foot-travelers, and each has rights that the other is bound to respect and it is also true that the automobile must use only the carriage-way of the street, while the pedestrian, except at street crossings, uses generally only the sidewalk. But the pedestrian in the use of the street at a regular crossing has the same right to its use as vehicles, and is under no legal duty to give way to automobiles. The automobile can go around him as well as he can go around it. It can get out of the way of the pedestrian about as easily and quickly as he can get out of its way, although it is usually the case, and rightfully so, that the pedestrian endeavors to keep out of the way of vehicles at street crossings, but if he does not, this does not excuse the driver of the vehicle who runs him down, unless it be that the driver was free from negligence and the pedestrian by his own want of care was to blame for the collision.

The argument is also made that as a pedestrian must exercise ordinary care for his own safety, and the operator of an automobile ordinary care to keep from injuring him, what constitutes ordinary care on the part of each should be specifically defined so that the jury in coming to apply the law to the facts may be better able to decide which party failed to exercise the described ordinary care and thereby brought about the injury. There would be much force in this suggestion except for the fact that the automobile on account of its power and capacity to injure requires in its operation a much higher degree of care on the part of the operator than is put upon the pedestrian. When a jury comes

to consider whether a pedestrian has failed to exercise ordinary care for his own safety, that is, such care as persons of ordinary prudence would exercise under similar conditions and circumstances, an instruction in general terms is all that is needed to enable a jury of ordinary intelligence, familiar from observation or experience or both with the rules of safety usually adopted by prudent persons, to find whether he has exercised the required degree of care.

If a pedestrian in crossing a street exercises such care as a person of ordinary prudence would use in looking after his own safety, considering the surrounding conditions, he has done all that the law expects him to do. There is no other reasonable standard by which to measure the care required of him. If this standard of care required that he stop and look and listen, then he must stop and look and listen. If it required that he must look and listen, or look alone, then he must do these things. But these special duties, although they are proper subjects for argument by counsel and proper subjects of inquiry by the jury, need not be pointed out as evidences of care in an instruction.

When, however, a jury comes to consider the care that the operator of an automobile should exercise, a general definition of what constitutes ordinary care is not sufficient to meet the conditions arising in the use of these powerful vehicles. The fact that law, as well as custom based on ordinary experience, and for the protection and safety of other persons, requires that they shall be operated at a reasonable speed, that the driver shall keep a lookout, and that warning of approach shall be given, itself demonstrates the propriety of pointing out in an instruction the duty the automobilist is under, so that the jury may have their attention specifically directed to the standard of care that must be exercised without being left to speculate as to what constitutes ordinary care.

For the reasons indicated, the judgment is reversed, with directions for a new trial in conformity with this opinion.