## Jones v. Gardner.

(Decided Feb. 25, 1936.)

JOSEPH J. BRADLEY and JOHN Y. BROWN for appellant.

HUFFAKER, HOGAN & BERRY, R. P. MOLONEY and NOLAN CARTER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Meredith Jones, by his committee, Lilly Jones, instituted this action against John S. Gardner and Letitia Gardner, his wife, seeking to recover damages for personal injuries alleged to have been caused by the negligence of John S. Gardner in the operation of an

automobile belonging to his wife and which he was operating as her agent and servant. However, when it was made to appear from the deposition of John S. Gardner, taken as if on cross-examination, that he was the owner of the automobile, the petition, upon motion of plaintiff, was dismissed as to Mrs. Gardner.

By answer, defendant made a general denial of the allegations of the petition with respect to negligence, and affirmatively pleaded contributory negligence upon the part of Meredith Jones.

Trial resulted in a verdict and judgment for defendant, and motion for new trial having been overruled, plaintiff is appealing.

The grounds urged for reversal in substance are: (1) That the court erred in refusing an instruction offered by plaintiff qualifying the instruction on contributory negligence and submitting the question of "last clear chance"; (2) that the court erred in not granting a new trial in order to let appellant present his testimony and to permit him to testify in his own behalf which he was prevented from doing by facts and circumstances appearing in motion and grounds for new trial and supporting affidavits; (3) that the attorney for the defense in his opening statement of the case made improper statements calculated to prejudice the minds of the jurors.

It will not be necessary to detail the evidence except in so far as it has a bearing on the points urged for reversal. The unfortunate accident out of which this litigation grew occurred on the Liberty pike in Fayette county. Meredith Jones and his brother, Everett Jones, were walking along the pike on the left side as they were traveling. Appellee in his automobile accompanied by Ferdinand Talbott, a colored boy, was traveling in the opposite direction. It was dark and appellee and other motorists passing along the highway had their lights on. The paved portion of Liberty pike at and near the place where the accident occurred is 16 feet in width with a gravel shoulder on each side varying in width from 1½ to 2 feet, and these were bordered by earth covered with weeds and undergrowth.

Everett Jones testified that he was walking on the shoulder on the left side of the road; that his broth-

er was walking abreast of him and about 18 or 20 inches over on the pavement; that he saw the lights of appellee's car as it approached them and if it had continued in the direction it was then going it would have safely passed them by, but as it neared, it turned back toward them and struck his brother.

According to the evidence of appellee he first saw Meredith Jones and his brother 600 or 800 feet ahead by the lights of another automobile, he was traveling at a rate of 20 or 25 miles an hour, and when he discovered them he slowed down and put his foot on the brake as he was descending a 4 or 5 per cent. grade. He next saw them about 250 feet ahead by the lights of his own automobile, one walking on the gravel shoulder and the other in the weeds, and every once in a while they would step up on the pavement. About the time he saw these men by the lights of his own automobile, another automobile came over the hill back of them and meeting him. He pulled over about 2 feet from the center of the pavement, keeping his eyes on the men and at the same time watching the car coming toward him; that the automobile meeting him pulled over to the opposite side with its right wheels on the shoulder, and he saw that all would pass safely if they continued in the same direction. When within about 50 feet of the pedestrians he saw they were keeping on the edge of the pike and he turned his attention more particularly to the automobile coming toward him. When he turned his attention to them again, they were 4 or 5 feet over on the paved road and about 4 feet ahead of the automobile. He then put on his brakes and cut his automobile slightly to the left in the short time he had, but the front bumper struck Meredith Jones. Further on in the direct examination he was asked, "As I understand you, he (referring to Meredith Jones) was walking along the edge of the pavement all the time until you were within 4 or 5 feet of him?" To which he replied, "Yes, he was headed to clear himself by 3 feet if he had continued the way he was headed."

The Talbott boy testified that when he first noticed the pedestrians they were about 300 feet ahead; that when Mr. Gardner got close to them he took his foot off the accelerator and slowed down to about 20 miles an hour; that after they met the other automobile, the man next to Mr. Gardner's car seemed to start across

the pike and the automobile hit him; that the automobile was obout 6 feet from appellant when he seemed to start across the road in front of it; that Mr. Gardner applied the brakes and stopped "immediately— just as quick as he could," and when they got out, the right wheels were about at the injured man's head.

In support of the contention that the court should have modified the contributory negligence instruction by an instruction submitting the last clear chance theory, counsel cite and rely on the cases of Myers v. Cassity, 209 Ky. 315, 272 S. W. 718; Lieberman v. McLaughlin, 233 Ky. 763, 26 S. W. (2d) 753; Peak v. Arnett, 233 Ky. 756, 26 S. W. (2d) 1035, and Ross v. Louisville Taxicab & Transfer Co., 202 Ky. 828, 261 S. W. 590.

As a general principle running through these and other cases bearing on the question, the last clear chance doctrine has no application until the injured and complaining party has by his own negligence placed himself in a position of peril and the defendant has discovered or by the exercise of ordinary care could have discovered his peril and by the use of ordinary care have avoided injuring him.

In the case of Myers v. Cassity, it appears that plaintiff saw an approaching automobile and it was apparent that it was going to pass him, and with this knowledge he attempted to cross the highway, knowing the close proximity of the automobile. This court held, in substance, that in the peculiar circumstances it was his duty to look and see where the automobile was before he attempted to cross, and if he had done so he would have seen the automobile bearing down on him and only a few feet away; that his failure to do so constituted contributory negligence. It was further held, however, that despite his contributory negligence the lower court properly overruled defendant's motion for a peremptory instruction because there was a scintilla of evidence that under the last clear chance doctrine, appellant might have avoided the accident. The scintilla of evidence grew out of the testimony of 2 witnesses riding in the automobile to the effect that some 15 to 30 feet from the point of the collision, one of the witnesses cried, "Look out, you are going to hit a man," and that the driver could then have sounded his horn in time for plaintiff to have jumped out of the path of

the automobile or the driver could have stopped it and thus avoided the accident.

In the Lieberman Case, it was held that an instruction in accord with the doctrine of the last clear chance should have been given if there was any evidence to authorize it, but that under the evidence that doctrine had no application, since plaintiff had walked against the defendant's automobile and the driver could not have avoided it; or the driver skidded the car against her by a sudden application of the brakes when the traffic light changed.

In the Peak Case, it was held that the last clear chance doctrine did not apply because there was no evidence to indicate that plaintiff was in peril until he left a place of safety and the accident immediately occurred; and, further, that the driver of the automobile is not required to anticipate that a pedestrian will leave a place of safety and get into the path of his car until, by some demonstration or movement of the pedestrian, it is apparent that he will do so.

In the Ross Case, plaintiff and his wife were crossing a street and saw a taxicab approaching 300 feet from them. The automobile struck them when they were two-thirds across the street, which was 38 feet in width. The evidence showed there was nothing to prevent the driver of the taxi from seeing them as they were in plain view from the time they started across the street, and that in such circumstances an instruction submitting the last clear chance theory should have been given.

From this brief statement of the cases relied on it is apparent that the case here may be distinguished, since it presents an entirely different state of facts. As will appear from the evidence, one of two things must be true. According to the evidence of appellant's brother, one of the eyewitnesses to the accident, appellant was walking along near the edge of the paved portion of the highway and appellee negligently ran his car so as to strike and injure him. Appellee admitted that he saw appellant approaching from the opposite direction and walking along near the edge of the highway. According to the evidence of appellee and the Talbott boy, the other two eyewitnesses, appellant left a place of safety and so suddenly placed himself in the path of the on-coming automobile that the collision was inevitable and could not be avoided. It is therefore

obvious that the instructions on negligence and contributory negligence properly presented to the jury the issues of fact made by the proof, and the court did not err in refusing to qualify the contributory negligence instruction.

It is made to appear in the motion and grounds for new trial that appellant was at the time of the trial an inmate of the Eastern Kentucky Insane Asylum at or near Lexington; that appellant's committee and brother, as well as counsel, believed and had been told by the physicians at the asylum that appellant was not in a physical or mental condition to be taken from the institution to testify on the trial; but one of the physicians at the asylum, who was called as a witness by appellee, testified that at the time appellant was of sound mind and was able both mentally and physically to appear in court and testify. This showing did not authorize the granting of a new trial on the ground of newly discovered evidence because counsel were acquainted with all the facts set forth in the motion and grounds for new trial and supporting affidavits before the trial had closed. Before new trial can properly be granted on this ground, it must be made to appear that the new facts were discovered after the trial. Brady v. B. & B. Ice Co., 239 Ky. 170, 39 S. W. (2d) 252, and cases therein cited.

Nor did the showing made authorize a new trial on the grounds of surprise. It has often been held by this court that a party taken by surprise during the trial must act promptly and will not be allowed to take a chance of getting a verdict, and then if he loses demand a new trial. Lesser v. Jefferson Fire Ins. Co., 141 Ky. 667, 133 S. W. 551; Kenmont Coal Co. v. Salyer, 239 Ky. 88, 38 S. W. (2d) 940; Caldwell v. E. F. Spears & Sons, 186 Ky. 64, 216 S. W. 83.

The alleged improper statements of appellee's counsel to the jury are only referred to in the motion and grounds for new trial, and are not shown by the bill of exceptions. The opening statement or the closing argument of counsel is not a part of the record and cannot be reviewed on appeal, where it is not shown by the bill of exceptions. Illinois Cent. R. Co. v. Josev's Adm'x, 110 Ky. 342, 61 S. W. 703, 22 Ky. Law Rep. 1795, 54 L. R. A. 78, 96 Am. St. Rep. 455; Bannon v. Louisville Trust Co., 150 Ky. 401, 150 S. W. 510; Geo.

T. Stagg Co. v. Brightwell, 92 S. W. 8, 28 Ky. Law Rep. 1220.

Judgment affirmed.

Whole court sitting.