## Layne v. Cottle.

April 25, 1941.

222

Dysard & Dysard and E. Paul Williams for appellants.

E. Poe Harris and Davis M. Howerton for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Thirteenth Street in Ashland, Kentucky, runs north and south, and over which runs a number of state highways passing through the city. Some block or more south of the main part of the business section of the city McKinley Avenue, running east and west, intersects Thirteenth Street from the west, but it does not extend east beyond its intersected street where it would run if it continued east. Instead there is located at that point on the east side of Thirteenth Street a garage known as Justace's Garage. On the evening of December 23, 1938, between 6 and 7 o'clock, the appellee and plaintiff below, Minnie Cottle, was traveling as a pedestrian from her home, considerably south of McKinley Avenue, to the business part of the city, and in making the trip she walked on the east side of Thirteenth Street until she arrived at Justace's Garage opposite the mouth of McKinley Avenue, where she proceeded to cross Thirteenth Street to its west side, and just before reaching that side she was struck by an automobile going south and driven by one Eskridge, who was in the employ of the appellant Leonard L. Layne, the defendant below, and who operates a drug store in the city of Ashland— the automobile then being operated by Eskridge in the proper conducting of his principal's business. Besides being shocked and receiving other minor injuries the bones in her right leg, some three or four inches below the knee, were broken and it is contended by plaintiff— and so proven by at least one of her professional witnesses—that one of the bones of her injured leg was splintered or shattered clear up to the knee joint, causing the appearance of calloused substance thrown out by nature to take care of the disrupted situation. She filed this action in the Boyd circuit court against defendant, charging negligence of his servant in operating the auto-

mobile whereby she sustained her injuries and sought damages in the gross sum of $10,000, plus $300 for loss of time; $96.75 for hospital bills; $8 for ambulance bill, and physician's bills in the sum of $100. The answer controverted the material averments of the petition with a plea of contributory negligence, which was denied by reply, and at the trial the jury, under the instructions submitted to it by the court, returned a verdict in favor of plaintiff, by ten of its members in the sum of $5,404.75. Defendant's motion for a new trial was overruled and from that order and the judgment pronounced on the verdict he prosecutes this appeal.

A number of grounds as constituting alleged reversible errors are set out in the motion for a new trial, but on this appeal learned counsel for appellant present and discuss only these: (1) Error of the court in overruling defendant's motion for a peremptory instruction in his favor because, as contended by counsel, the testimony indisputably shows contributory negligence on the part of plaintiff to such an extent as to relieve defendant of liability; (2) error in instructions 1 and 3 given by the court to the jury over defendant's objections and exceptions; (3) incompetent evidence admitted over defendant's objections, and (4) that the verdict is excessive in that the proof is insufficient to authorize a finding of permanent injury. Those argued grounds will be considered in the order named.

1. In disposing of ground (1) it becomes necessary to make at least a skeleton statement of the facts. As indicated, plaintiff arrived at the Justace Garage on her trip from her home to the business part of the city and before attempting to cross Thirteenth Street she looked both ways, which revealed an approaching car from the south on Thirteenth Street, but a sufficient distance away to enable her to cross it with safety. She, however, saw no car approaching from the north which was the direction from which defendant's automobile approached when it collided with her. Her view in that (north) direction extended to Lexington Avenue, 520 feet from where she was standing. She testified that not seeing any car approaching from that direction she did not again look that way while attempting to cross the street, but that when she got within possibly 12 feet of the opposite side of Thirteenth Street she was struck by defendant's automobile driven by Eskridge, his serv-

ant. It is defendant's contention that the failure of plaintiff to keep a continuous watch up and down the street she was crossing to discover approaching vehicles was negligence per se on her part, and for which reason defendant was entitled to his offered peremptory instruction. It must be conceded that some of the courts of the Union appear to have approved that doctrine, at least some of those cited in counsel's brief appear to support it, but they are only instances of like conditions that prevail with reference to almost every other legal proposition, i. e., that some courts decide it one way, while others hold to the exact contrary. If the question had never been determined in this jurisdiction by this court, it would then become our duty to adopt whichever rule we thought was more conducive to the administration of justice between litigants, and which more nearly harmonized with the fundamental principles of the law. But the ruling contended for has been directly and in express terms decided by this court exactly contrary to the contention of appellant's counsel. It was so done in the cases of Weidner v. Otter, 171 Ky. 167, 188 S. W. 335; Melville v. Rollwage, 171 Ky. 607, 188 S. W. 638, L. R. A. 1917B, 133; Trainor's Adm'r v. Keller, 257 Ky. 840, 79 S. W. (2d) 232, and Pryor's Adm'r v. Otter, 268 Ky. 602, 105 S. W. (2d) 564. The law with reference to the rights of parties occupying the same relationship to each other as that sustained by plaintiff and defendant in this case is extensively discussed in the last two domestic cited cases, and the reader is referred to those opinions without again repeating here what we therein said. Suffice it to say that in each of those domestic cases we expressly held that it was not per se negligence for a pedestrian traveler on or across a street or highway to fail to look for the approach of cars, unless he had so looked before entering upon the street and saw the approach of a car, in which instance it became his duty to exercise proper precaution to avoid collision with that known approaching car, and to negligently fail in that respect to protect himself from a known approaching danger might or might not be per se negligence in view of other proven facts in the case.

Substantiating those opinions to the effect that it is not per se negligence for a pedestrian to fail to constantly look for approaching cars while crossing a street

is the text in volume 5-6 Cyclopedia of Automobile Law by Huddy, on pages 129, 140, 144 and 149, and also annotations in 79 A. L. R. 1082 under the heading of "Duty to Continue to Look." That subdivision is commenced by the annotator with this language: "A pedestrian lawfully crossing a public thoroughfare is not bound as a matter of law to look continuously for automobiles." Cases from the highest courts of sixteen states and one from a Federal Circuit Court of Appeals are cited, among which is the Weidner case supra, and also that of Wilder v. Cadle, 227 Ky. 486, 13 S. W. (2d) 497. We, therefore, conclude that this argued ground for reversal cannot be sustained.

2. The criticism of instruction 1 is twofold—(a) that it submits the speed limit at which Eskridge was driving defendant's car at the time of the collision when there was no competent evidence to show that he was exceeding the permissible limit of 25 miles per hour; but that all of the competent testimony showed that he was traveling at a speed within that limitation, and (b) that the instruction required the automobile he was driving to be equipped with lights that would reveal the presence of a person on the street in front of the car for 350 feet ahead as is required by chapter 106, page 505, of the Session Acts of 1938, and which is Section 2739g-24 in Baldwin's 1939 Service Supplement to Corroll's Kentucky Statutes. The instruction expressly told the jury that it was the duty of defendant to have his car equipped with two such lamps on its front end, and that if he failed to do so and such failure caused the collision with plaintiff, then the verdict should be returned in her favor for the amount of damages she sustained, to be measured by another instruction in the case. However, the requirement in that act for lights sufficient to reveal the presence of persons 350 feet ahead of the car was expressly made not applicable to cars sold within one year after the effective date of the act (which was May 31, 1938) when defendant had purchased his automobile at a time so as to bring him within the provided exemption with reference to front light equipment. Notwithstanding he was so exempt and was only required to furnish light revealing the presence of persons only 200 feet away from him (under the prior law) the instruction required lights revealing the presence of persons on the street 350 feet ahead, thus making defendant liable

for the inability of his lights with which his car was equipped to reveal a person for a distance of 150 feet more than the law required as applicable to his automobile. It is our opinion that the departure of the instruction from the prescribed provisions of the statute constituted a prejudicial error authorizing a reversal of the judgment, since it clearly imposed a duty on the part of the operator of defendant's automobile for which there was not only no legal authority, but in direct conflict with the requirements of the statute as applicable to defendant's automobile.

Criticism (a) arises from this situation: Witnesses who worked in the garage referred to stated that following the collision they observed the speed of defendant's automobile while it was being driven about 60 feet away from the point of collision where it was parked, and that it was then traveling at a rate of speed higher than that permitted in such places. Eskridge, who was operating the automobile, testified, as did a number of other witnesses, that he stopped within 5 feet after colliding with plaintiff, but in order to get his automobile out of the way of the crowded traffic on the street he immediately started ahead, seeking a parking place for the automobile, which he found about 60 feet further on. He immediately went back to the scene and rendered whatever assistance he could, and which anxiety to render assistance prompted hurried action on his part in stationing or parking his automobile, and he may have traveled after the collision at a greater rate of speed than he was traveling at the time it occurred. Neither of the witnesses referred to, nor any one else, placed the speed of the automobile before the collision beyond the permissible rate of 25 miles an hour, while some of them placed it at a less rate. We have concluded that the court erred in admitting that evidence and which is the only error of like kind complained of under ground (3), supra, and for which reason that ground will not be further referred to or discussed by us.

4. Ground (4) has given us more or less trouble in its determination. What might be termed the great preponderance of the evidence is to the effect that plaintiff's injuries are, or need not have been, permanent had she obeyed the instructions of her physician as to what she should do to restore normal conditions and ob-

tain permanent relief; but whether or not in the proven circumstances of the case the evident finding of the jury of permanent injury, and the amount of the verdict returned therefor, is or is not excessive presents a question which we have concluded to pass without determination, since for the reasons hereinbefore stated the judgment will have to be reversed and a new trial had. This question is, therefore, reserved. Other questions are discussed in briefs of counsel, some of which are urged by those representing plaintiff in avoidance of the grounds hereinbefore discussed, but neither they, nor any of the other grounds discussed by defendant's counsel, are regarded as sufficiently meritorious to receive approval at our hand.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.