## Coburn v. Louisville & N. R. Co. et al.

Oct. 22, 1943.

Benton & Benton for appellant.

H. T. Lively, C. S. Landrum and Odis W. Bertelsman for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

Appellant resided with his daughter on Robert Street in Newport, Kentucky; owned a truck; and was engaged in landscaping, tree trimming, and sodding. On November 16, 1940, about 6:30 o'clock p. m. in returning from Fort Mitchell where he had been working, he drove his truck into Saratoga Street from Sixth Street, intending to proceed southwardly on Saratoga Street to Eighth Street, and from thence into Robert Street. A track of the Louisville & Nashville Railroad Company occupied the center of Saratoga Street, and a portion of the west side of the street had been torn up for several weeks in the process of laying utility pipes. The temperature was near freezing, and there had been a light snow fall which made the street slippery. There were also holes in the

pavement and deep ruts immediately adjacent to the rails. Knowing that trains were operating over the track, the appellant stopped his truck, the lights of which were burning, and looked up and down the street but saw nothing coming in either direction. On the west side, about 100 feet south of Sixth Street, was an alley which intersected Saratoga Street at right angles. On the west side of Saratoga Street, and a short distance north of this alley, a mound of earth had been placed outside and to the east of the excavated trench. Around the dirt pile and excavation warning lights had been placed, but the street had not been blocked to traffic. As appellant drove southwardly on Saratoga Street and approached that portion of it made narrow by the excavation and dirt pile, he pulled to the left in order to drive around them, and in so doing "aimed to straddle the track," that is, the westerly rail of the track. Within a short distance, while he was straddling the track, or attempting to do so, he came to a point where a switch track joined the main line, with the result that the wheels of the truck slid over into the ruts which paralleled the track. He continued to drive southwardly with the left wheels of the truck against the inside of the east rail and the right wheels presumably on the outside of the west rail in the rut. After he had traversed nearly half of the block between Sixth and Seventh Streets, he saw, approaching him from a point between Seventh and Eighth Streets, a northbound freight train of the Pennsylvania Railroad Company traveling at a speed of from 18 to 20 miles per hour with its headlight burning. Thereupon, after unsuccessfully trying to get out of the track by first turning to the left and then to the right, and when the engine was about 100 feet from him, he threw his truck into reverse and proceeded to back. The engine overtook him after he had backed a distance of about 50 feet, crushed the front end of the truck, finally pushed it off the rails, and came to a stop at a point very near the intersection of Sixth Street.

Neither the appellant nor any of his witnesses heard any sounds indicating that the train crew applied the airbrakes until the moment of the impact; and, for the purposes of this opinion, we will treat it as established that the brakes were not applied until the collision occurred.

The foregoing resume of the facts is gathered from the testimony of the appellant and his witnesses, since

the appellees introduced no proof. Neither the length nor the weight of the train, nor the distance in which it could have been stopped was shown. The court was also left to speculate as to the exact point between Sixth and Seventh Streets at which the collision occurred. In addition to instructing on the duties of the train crew and the duty of appellant to exercise ordinary care for his own safety, the court gave other instructions, the tenor of which was to exonerate the appellees if the jury believed that appellant had time to reach a place of safety before colliding with the train but was prevented from doing so because of the condition of Saratoga Street, or, if they believed that appellant knew, or, by the exercise of ordinary care could have known of the condition of Saratoga Street and of its condition between the rails, and, nevertheless, entered upon the street. It is patent that these instructions were erroneous; and also that appellees' contention that they were entitled to a directed verdict on the ground that appellant was guilty of contributory negligence as a matter of law, is not sustainable.

Appellant argues, not only that the instructions given were incorrect, but that he was entitled to an instruction embodying the last clear chance doctrine; and with this latter contention we would agree had there been any proof from which the inference could reasonably be drawn that the train crew, after appellant began backing his truck, could have stopped the train by use of the means at hand before it overtook the truck. Lacking exact measurements, the proof (as summarized by appellant's counsel in attempting to demonstrate the distance in which the train could have been stopped), indicated that the truck, after it had been turned around and cast off the track by the train, came to rest at about 140 or 150 feet south of Sixth Street, or 40 feet above the intersecting alley. Although there was no proof on the subject, appellant's counsel state: "It is reasonable to infer that the truck was not pushed or knocked more than 30 or 40 feet, and the actual point of impact must have been not more than 180 feet above Sixth Street." Since the testimony showed that the engine stopped near the intersection of Sixth Street, it is argued that the train "certainly stopped within less than 180 feet from the point where the brakes were applied." Appellant, however, testified that he was past the alley and near the middle of the square when he first saw the train and proceeded an unstated distance before he threw the gears of

his truck into reverse. On another page of their brief, appellant's counsel, in attempting to show that the train crew could have seen appellant when the engine was more than 300 feet distant from the point where appellant first saw it, state that, interpreting the testimony into terms of feet, appellant was 250 feet south of Sixth Street when he first saw the train. Assuming that the distance which he traveled, while attempting to get out of the track after seeing the train, was 25 feet or "very short," as appellant's counsel term it, and that he then backed 50 feet before the collision occurred, it would seem that a more reasonable inference would be that the point of collision was at least 200 feet south of Sixth Street and that it required approximately that distance in which to bring the train to a stop following the collision, although, for some distance at least, the engine was encumbered with the truck with which it had collided. The conclusion of appellant's counsel that the train could have been stopped in less than 180 feet is, in fact, inferable only from the inference that the train pushed the truck along the track before casting it aside, a distance of less than 40 feet. Even so, it seems to us that the more reasonable inference, were it permissible to draw an inference from an inference, would be that the train's progress was slowed up by the weight of the truck which it pushed before it, and that since the train had nearly reached the intersection of Sixth Street before it stopped, it would have required, if unimpeded, more than a distance of 180 feet in which to bring it to a stop by the use of the brakes.

If we were able to agree that the proof established that the train could have been stopped within 180 feet from the point where the brakes were applied, we would still be unable to agree with appellant that, because the operators of the train could have seen the approaching truck when the train had reached a point from 350 to 400 feet from the place of collision, they were negligent in not applying the brakes in time to have avoided the collision. Our conclusion is the necessary result of the well-settled rule of law that the operators of a train or street car have the right to assume that a person or vehicle upon the track will leave it in time to avoid a collision, and are liable, under the last clear chance doctrine if a collision results, only for their failure to act after the imperiled individual's inability to leave the track, or unawareness of the peril, becomes discoverable. Chesapeake & Ohio

Railway Co. v. Switzer, 275 Ky. 834, 122 S. W. (2d) 967; Louisville & Nashville Railroad Co. v. Shaw's Adm'r, 264 Ky. 321, 94 S. W. (2d) 642; Public Service Co. of Indiana v. Schneider's Adm'r, 260 Ky. 334, 85 S. W. (2d) 676, 102 A. L. R. 712; Smith v. Ohio Valley Electric R. Co., 223 Ky. 311, 3 S. W. (2d) 604; Louisville & Nashville Railroad Co. v. Hurst's Adm'r, 220 Ky. 402, 295 S. W. 458; Goldberg, etc., v. Chesapeake & Ohio Railway Co., 211 Ky. 115, 276 S. W. 1087; Louisville & Interurban Railroad Co. v. Bedford's Adm'r, 203 Ky. 583, 262 S. W. 941; Comment at Page 62 of the learned annotation on the Last Clear Chance Doctrine beginning at Page 47, Vol. 92, A. L. R. See also this annotation and the supplementary annotation in Vol. 119 A. L. R., beginning at Page 1041, for a discussion and classification of the types of cases to which the doctrine is properly applicable.

In the majority of jurisdictions the Last Clear Chance Doctrine is held to be applicable only when the evidence indicates that the peril in which the complainant had placed himself was discovered—not to those cases in which the peril was merely discoverable by the exercise of ordinary diligence. This State (at least where it is shown that the plaintiff was physically unable to extricate himself from the dangerous situation, and except in the case of trespassers to whom no lookout duty was owing) has adopted the more humane rule that the duty of a defendant to utilize the means at hand to avoid the injury begins when the plaintiff's peril might have been so discovered. This may be said to atone in a manner for the harshness which is apparent in the rule that the plaintiff's contributory negligence absolutely bars any recovery when that rule is contrasted with the doctrine prevalent in some jurisdictions which permits a jury to compare the negligence of the opposing litigants and thus apportion their responsibility. But even in our application of the last clear chance doctrine it is held to be essential that the plaintiff introduce evidence that the peril was at least discoverable by the exercise of ordinary care in time to have avoided the ensuing injury. Accepting as true, appellant's proof, and indulging all legitimate inferences which may be drawn therefrom, the only negligence which could be charged against appellees on this record is that the train crew did not apply the air-brakes until the engine had overtaken the backing truck, when they should have applied the brakes when the truck began its retreat. But even had they

done so, there is no proof indicating that the train could have been stopped by the use of the brakes or any other means at their command within the distance between the place occupied by the engine when appellant reversed the gears and the point at which the collision occurred, that is, within 150 feet, if appellant was correct in his statement that the engine was 100 feet away when he reversed his gears and that he had backed the truck 50 feet when it was overtaken. Therefore, the failure of the train crew to apply the brakes prior to the collision could not be regarded as a proximate cause of the accident; from which it follows that the court properly refused to instruct on the last clear chance doctrine. Thornton v. Louisville & Nashville Railroad Co., Ky., 70 S. W. 53; Chesapeake & Ohio Railway Co. v. Epling's Adm'r, 262 Ky. 609, 90 S. W. (2d) 719. No other negligence having been shown, the court should have sustained appellee's motion for a directed verdict.

Judgment affirmed.