Marable McFALL, Plaintiff-Appellee,

v.

John TOOKE, Defendant-Appellant.

No. 14681.

United States Court of Appeals
Sixth Circuit.

Oct. 5, 1962.

618

Adrian H. Terrell, Paducah, Ky. (Terrell, Schultzman & Hardy, Paducah, Ky., on the brief), for appellee.

William B. Byrd, Paducah, Ky. (Waller, Threlkeld, Whitlow & Byrd, Paducah, Ky., on the brief), for appellant.

Before CECIL, Chief Judge, and WEICK and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

This is an appeal by defendant-appellant, John Tooke, from a judgment of $43,090.65 entered upon a jury verdict in favor of plaintiff-appellee, Marable McFall. The action sought damages for personal injuries suffered by plaintiff when, as a pedestrian, he was struck by an automobile driven by defendant. This is a diversity case and Kentucky law controls.

Upon a first trial of the cause, the jury disagreed. The verdict upon which judgment was entered came at the conclusion of a second trial. On the first trial, defendant's motions for a directed verdict at the end of plaintiff's proofs and at the close of proofs were denied. A motion, made after the discharge of the jury, for judgment in accordance with defendant's motions for a directed verdict (F.R.Civ.P., Rule 50(b), 28 U.S.C.A.) was likewise denied. Defendant's Statement of Questions Involved on this appeal is as follows: "Was defendant-appellant entitled to judgment in accordance with his motions for directed verdicts pursuant to F.R.Civ.P., 50(b), at the conclusion of the first trial?"

Defendant's motions for direction of verdict and for judgment were based on three grounds: first, that there was no evidence from which the jury could find the defendant guilty of negligence which was a proximate cause of the injury; second, that plaintiff was guilty of contributory negligence as a matter of law; and third, that plaintiff's contributory negligence, under the facts of the case, could not be excused by the jury's application of the last clear chance doctrine. The District Judge, at the first trial, submitted to the jury the questions of defendant's negligence, plaintiff's contributory negligence, and whether, if they found plaintiff guilty of contributory negligence, the defendant, nevertheless, had a last clear chance to avoid striking the plaintiff. The language employed by the District Judge in submitting these issues on the first and second trial is not criticized.

On this review, we follow the universal rule that the evidence must be considered most favorably to the plaintiff, drawing therefrom all legitimate inferences on his behalf. In this light, we recite the undisputed facts and those which the jury could find from the evidence. This pedestrian-motorist collision occurred on U. S. Highway 68 within the city limits of Cadiz, Kentucky, at about 7:30 P.M. on October 8, 1958. Highway 68 runs in a generally east and west direction at this point, and has a paved surface 18 feet wide. The highway is substantially straight and level for about a half mile to the east of the place where the events here involved occurred. The posted speed limit at that point was 35 miles per hour. Plaintiff, an adult, left a motel on the south side of the highway to go to a restaurant on the north side thereof. Before enter-

ing onto the pavement he looked both ways and did not see any approaching vehicles. With a companion on his right, he proceeded "at an ordinary pace" to cross the highway, walking in a north-westerly direction on a diagonal course. He did not look again to the east while crossing and was struck by defendant's automobile, coming from the east, just as he was "stepping off the concrete"—"his front foot was going off the concrete." The plaintiff was carried on the hood of defendant's car a distance of 173 feet before his body slid off the hood. Defendant's car stopped about 40 feet beyond the point where plaintiff's body had fallen. There was evidence that defendant was going fifty to sixty miles an hour when he struck plaintiff.

There was evidence that a person on the south edge of the pavement, looking to the east from the motel, would, in daylight, have an unobstructed view of upwards of 2,000 feet. At the time of the accident, which occurred after nightfall, the highway for several hundred feet to the east of the motel from which plaintiff started was brightly lighted by flood lights and other illumination on the restaurant, gas stations and light poles. There was evidence that the brightly lighted area extended 405 feet. Plaintiff's testimony was to the effect that there was no vehicle within the brightly lighted area when he looked to the east. When pressed to give how far this area extended, he said that "it was more than 200 feet." He further said, "I don't know whether you could see beyond those bright lights at the station, filling sta-

tion, or not, but I doubt it, because it is dark here (sic)." Plaintiff was not on a cross walk as he proceeded across the pavement.[1]

Defendant's version of the accident was that, driving from the east, he reduced his speed from 40 miles per hour to about 25 miles per hour as he came to the city limits of Cadiz. He had his dimmers on.[2] As defendant approached, and proceeded into, the brightly lighted area where the collision occurred, his view ahead was entirely unobstructed. There were no vehicles ahead of him or approaching from the opposite direction. Defendant testified that at the time he reached the lighted area, he could have seen a man at a distance of at least 350 or maybe 400 feet ahead. He testified that at no time did he see the plaintiff and his companion crossing his path from the south to the north edge of the pavement. He said that he observed two men standing off of, but adjacent to, the north edge of the pavement when he was about 58 feet (the width of the court-room) away from them. He then slowed his car to 20 miles per hour and when he was 6 to 8 feet from the point of impact, plaintiff moved "a good step" out onto the pavement. Defendant insisted that plaintiff was moving from north to south in the direction of the motel but he wasn't sure whether, so moving, he was going backwards or forwards. He stated he had no time to do anything to avoid striking plaintiff. He explained the distance he traveled after the impact by saying that he feared that a sudden stop would throw plaintiff off the hood and

1. K.R.S. 189.570(4) provides:
 "(a) Every pedestrian crossing a road-way at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway."
 * * * * *
 "(d) Notwithstanding the provisions of this subsection every operator of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any road-way, shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing a child

or a confused or incapacitated person upon a roadway."

2. Under K.R.S. 189.040(3) (a), defendant was required to have bright lights so as "to reveal persons * * * at a distance of at least three hundred and fifty feet ahead * * *" and under subsection (3) (b), his dimmers were required "to reveal persons * * * at a distance of at least one hundred feet ahead * * *." Under subsection (5) dimmers are to be used "whenever a driver of a vehicle approaches an oncoming vehicle within five hundred feet * * *."

under the wheels of his car, so he gradually slowed down until plaintiff did slide off the car. He then pulled over onto the shoulder.

### 1) *Defendant's negligence.*

▮▮ Under the foregoing facts, the jury could find that defendant was guilty of negligence which was a proximate cause of his striking the plaintiff. There was evidence that he was driving in excess of the applicable speed limit, a speed that the jury could find unreasonable without reference to the speed limit. Defendant was entering an area with business places on both sides of the highway. Even though under K.R.S. 189.570(4) he had the right of way over pedestrians crossing at places other than at a crosswalk, he was obliged, both under common law duties and under subsection (4) (d) of the above statute, to exercise due care "to avoid colliding with any pedestrian upon any roadway." No authorities need be cited for the proposition that it was his duty to keep a lookout for pedestrians and other traffic on the highway, to sound his horn if necessary (see K.R.S. 189.570 (4) (d)) and to proceed as an ordinarily prudent person would have done under like circumstances. The jury could find that he neglected such duties and that his negligence was a proximate cause of the collision.

### 2) *Contributory negligence as a matter of law.*

▮▮ Contributory negligence is an affirmative defense which must be pleaded and proved by defendant. (Rule 8.03, Ky.R.C.P.) On a motion for a directed verdict based on contributory negligence, "the burden is upon the defendant to establish * * * that plaintiff was guilty of some specific act, or omission to act, which did not meet the standards of conduct exacted by law." Eichstadt v. Underwood, 337 S.W.2d 684, 686 (Ky., 1960). A verdict will not be directed except where the only fair and reasonable conclusion that can be drawn by reasonable minds is that plaintiff's own negligence was a contributing proximate

cause of the injury. Eichstadt v. Underwood, supra; Neal v. Ashland-Ironton Transfer & Ferry Co., 201 Ky. 332, 256 S.W. 721 (1923). In meeting his burden on such issue, the defendant may rely on plaintiff's own description of his conduct. If, however, there are gaps in the proof which leave uncertainty as to some factual elements relevant to the question of plaintiff's contributory negligence, the consequence of such failure of proof must fall upon the defendant.

We apply these rules to the following facts. A pedestrian who is about to cross an 18 foot pavement, from south to north, looks both ways for traffic. Upon his view to the east, he ascertained that there was no vehicle within a distance of 405 feet from the point at which he was to enter the travelled surface. He proceeded at a normal walk somewhat diagonally to the northwest (the exact angle is not determined by the evidence) and never looked again to the east while crossing. When he had reached to within one step of the north edge of the pavement, he was struck by an automobile travelling at 60 miles per hour. It should be noted that there is a failure of proof as to the angle at which plaintiff crossed the highway and the rate of speed of his walking. Thus there is nothing from which to determine exactly the distance and time involved in plaintiff's crossing. Absent such proof, we do not think that a jury would be compelled to find that, because plaintiff was struck before he had crossed the road completely, the defendant's vehicle must have been within the 405 feet of brightly lighted area, the extent of plaintiff's view at the moment he looked to the east.

The question then arises whether plaintiff, having ascertained that there was no vehicle within a distance of 405 feet, was negligent, as a matter of law, in proceeding to cross an 18 foot pavement without a further look.

▮ We have searched the Kentucky decisions to find a case factually similar enough to the case before us to provide us with a clear precedent to follow.

While finding no such exact precedent, we do find expressions of the Kentucky Court of Appeals concerning the relative duties of pedestrians and motorists which justify the conclusions we reach here. First, we note that under Kentucky law a pedestrian will not be excused by saying that he didn't see a vehicle which he must have seen had he looked. Jordan v. Clough, 313 S.W.2d 581 (Ky., 1958); Severance v. Sohan, 347 S.W.2d 498 (Ky., 1961); Vaughn v. Jones, 257 S.W.2d 583 (Ky., 1953). We do not depart from this general rule in our decision.

■ While there is an occasional reference in the Kentucky decisions to a pedestrian's duty to "keep a lookout" as he proceeds across a highway, such statements must be read in the context of the particular cases. We are satisfied that under Kentucky law the failure to continuously look for traffic while crossing a street is not negligence as a matter of law, unless a preparatory look discloses a vehicle so close as to constitute a danger, or unless the pedestrian's look is so unobservant or so limited as to provide no assurance that a crossing could be made with safety. Monroe v. Townsend, 308 Ky. 123, 127, 213 S.W.2d 803 (1948); Eichstadt v. Underwood, 337 S.W.2d 684, 686 (Ky., 1960); Layne v. Cottle, 286 Ky. 221, 224, 225, 150 S.W.2d 684 (1941). There will, indeed, be cases where a pedestrian must keep a continued lookout, as in a case where the distance he must travel to safety and the limitations or inadequacies of his preparatory view of traffic would suggest to any reasonable person that due care required continuous looking. In Wilder v. Cadle, 227 Ky. 486, 489, 13 S.W.2d 497 (1929), the argument was made that a pedestrian was guilty as a matter of law for failing to take a second look after starting to cross a street. The court said:

"The argument is predicated upon the failure of plaintiff to look again after starting across the street. She was not, as a matter of law, guilty of contributory neglect in not look-

ing again. It was for the jury to decide whether her conduct on the occasion in question was that of an ordinarily prudent person under like circumstances, and whether she was so careless of her own safety as to defeat her right of action." (227 Ky. 489, 13 S.W.2d 498.)

■ The events involved occurred within a city area with business enterprises in operation on both sides of the street. The applicable speed limit was 35 miles per hour for a part of the distance involved, and 45 miles per hour for the balance. On these facts, reasonable minds would not be obliged to find that plaintiff should have anticipated that a motorist, travelling 60 miles per hour, might enter and traverse the 405 foot area he saw clear, before he could safely cross 18 feet. Certainly this pedestrian would have been wiser to have taken another look when in the center of the street, which, if it had been taken, would no doubt have discovered defendant's speeding vehicle. His failure to do so, however, under Kentucky law, does not convict him of contributory negligence, as a matter of law.

One further point must be discussed concerning plaintiff's contributory negligence. Plaintiff was not on a crosswalk and was, accordingly, required to yield the right of way "to all vehicles upon the roadway" (K.R.S. § 189.570(4) (a)). The argument is made that his failure to do so amounts to contributory negligence as a matter of law. The Kentucky cases do not support this contention. The absoluteness of such statutory provision has been qualified by the Kentucky court. Referring to this statute, the court said in Baldwin v. Hosley, 328 S.W.2d 426, 431 (Ky., 1959), "The literally expressed absolute duty, however, has been modified by judicial construction to be only relative to the proximity of an approaching vehicle. Lehman v. Patterson, 298 Ky. 360, 182 S.W.2d 897; Whittaker v. Thornberry, 306 Ky. 830, 209 S.W.2d 498; Miracle v. Flannery's Adm'r, 259 S.W.2d 689." It held correct an instruction which told the jury that the pedes-

trian had to yield the right of way "if you believe that defendant's approaching vehicle at that time constituted an immediate hazard \* \* \*." (328 S.W.2d 429, 431). See Louisville Taxicab & Transfer Co. v. Byrnes, 296 Ky. 560, 178 S.W.2d 4 (1944); B-Line Cab Co. v. Hampton, 247 S.W.2d 34, 36 (Ky., 1952).

We find that the District Judge committed no error in holding that plaintiff's contributory negligence was a question of fact for the jury.

### 3) *Last clear chance.*

Notwithstanding our holding that plaintiff's contributory negligence was a question for the jury, if the District Judge erroneously submitted the doctrine of last clear chance to the jury, defendant is entitled to a new trial. Although defendant does not expressly ask for a new trial in his brief, he does argue that the last clear chance doctrine has no application to the facts of this case. He objected to the District Judge instructing the jury on last clear chance at the second trial in which the judgment appealed from was entered. He asserted as a ground for new trial the giving of such instruction, and his Notice of Appeal includes an appeal from the District Judge's denial of his Motion for New Trial made following the second trial. It may be that defendant, on this appeal, does not wish a new trial if his request for direction of judgment in his favor fails. It appears to be conceded that as it relates to the subject of last clear chance, the evidence at the second trial was the same as at the first. The question of the application of the doctrine is fully argued in the briefs of appellant and appellee. We, therefore, think it appropriate to consider it.

The doctrine of last clear chance has been described as a doctrine "as to the basis or extent of which there has been little agreement and endless discussion \* \* \*." Prosser, Handbook of the Law of Torts, § 52, p. 291 (2d Ed., 1955). In §§ 479 and 480, Restatement of the Law of Torts, the authors ably attempt to distill from the welter of case law the factual circumstances essential to its applicability. In § 479, it is said that a plaintiff in peril through his own negligence may recover for harm caused by defendant's subsequent negligence if, "a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and b) the defendant \* \* \* (iii) *would have* discovered the plaintiff's situation and thus had reason to realize the plaintiff's helpless peril had he exercised the vigilance which it was his duty to the plaintiff to exercise \* \* \*." In comment (a) to the foregoing, it is said that § 479 is applicable only when plaintiff is in "a position of peril from *which he cannot,* at the time of the accident, *extricate himself.*" (Italics provided.) In § 480, the plaintiff in peril *from which he could extricate himself* may recover, but he may do so "only if, the defendant (a) *knew of the plaintiff's situation,* and (b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm." (Italics provided) From the foregoing, it may be stated generally that if a plaintiff cannot show that he was in an inextricable position of peril he must show that defendant actually knew of and observed plaintiff's situation in time to take action to prevent harm. Dean Prosser's review of the subject supports such a rule.[3]

---

3. Prosser, Handbook of The Law of Torts, § 52 (2d Ed., 1955)

"The doctrine (last clear chance) is recognized by the greater number of courts:

"a. Where the plaintiff is helpless to avoid the harm by reason of his prior negligence, and the defendant discovers his peril in time to avoid it by proper care.

"b. Where the plaintiff is not helpless but merely inattentive, and the defendant discovers his inattention and his danger in time to avoid it.

"The doctrine is recognized by a strong minority of courts:

"c. Where the plaintiff is helpless, and the defendant does not discover his peril,

If the law of Kentucky is in accord with Restatement, §§ 479 and 480, an instruction on last clear chance should not have been given. There was no evidence that defendant actually discovered plaintiff's peril in time to avert the collision and there was no evidence from which the jury could find that plaintiff was helpless or in an inextricable position of peril.

 Kentucky has adhered to the rule that if the defendant should, or could, have discovered a plaintiff's peril by the exercise of reasonable care, one of the prerequisites to the application of the doctrine is present. Swift & Co. v. Thompson's Adm'r., 308 Ky. 529, 214 S.W.2d 758 (1948); Weintraub v. Cincinnati, N. & C. Ry. Co., 299 Ky. 114, 184 S.W.2d 345 (1944); Lacy v. Higgs, 314 Ky. 510, 514, 236 S.W.2d 272, 25 A.L.R.2d 250 (1951); Rose v. Vasseur, 320 S.W.2d 608, 611 (Ky., 1959); Ramsey v. Sharpley, 294 Ky. 286, 290, 171 S.W.2d 427 (1943); Hopper v. Barren Fork Coal Co., 263 Ky. 446, 456, 92 S.W. 2d 776 (1936); Jones v. Gardner, 262 Ky. 812, 815, 91 S.W.2d 520 (1936); Ellis v. Glenn, 269 S.W.2d 234, 236 (Ky., 1954); Coburn v. Louisville & N. Ry. Co., et al., 295 Ky. 530, 534, 174 S.W.2d 775 (1943). We think that under the evidence of this case, the jury could find that, with his unobstructed view of the highway in front of him, defendant could, and should, have seen the plaintiff at all times as he walked across the highway. He had the means and opportunity to discover plaintiff's peril and, after the time that such discovery should have been made, ample time to have avoided striking the plaintiff, had he exercised due care. On the other hand, we are of the opinion that the undisputed evidence discloses that plaintiff was at no time, prior to the actual impact, in a helpless or inextricable position of peril. As plaintiff walk-

ed diagonally across the highway, he at no time looked to the east from whence the defendant must have been approaching. When struck, plaintiff had almost reached safety. By his own testimony, he avers that he was within one step of reaching the safety of the shoulder of the road. Had he, upon reaching the center of the road, or at any time thereafter, glanced back over his right shoulder, he would have discovered and could have escaped from the approaching danger. He was not helpless but was, indeed, nonchalantly inattentive.

 Kentucky, particularly in its later decisions, follows the rule announced in the Restatement that, absent proof that defendant actually saw plaintiff's peril, plaintiff may not rely on the doctrine of last clear chance to absolve him of contributory negligence, unless his own position of peril is one of inextricable helplessness. There are a number of cases in which pedestrian plaintiffs who were run down by motorists while walking or running across streets, were held entitled to employ the last clear chance doctrine. Ellis v. Glenn, 269 S.W.2d 234, 237 (Ky., 1954); Ramsey v. Sharpley, 294 Ky. 286, 171 S.W.2d 427; Heskamp v. Bradshaw's Adm'r., 294 Ky. 618, 172 S.W.2d 447 (1943); Dixon v. Stringer, 277 Ky. 347, 355, 126 S. W.2d 448 (1934); Ratterman v. Cleveland, 309 Ky. 435, 217 S.W.2d 978 (1949); Ross v. Louisville Taxicab & Transfer Co., 202 Ky. 828, 261 S.W. 590 (1924). In some of these cases the pedestrian was running, or otherwise seeking to escape from disaster, when struck. The facts as reported in others would leave the impression that plaintiff's peril was not inextricable. However, in none of those cases is there any discussion or consideration of the helplessness of plaintiff's position. In 1943, during the period covered by the

but with proper vigilance might have discovered it in time to avoid the harm.

"The doctrine is not recognized by most courts:

"d. Where both parties are merely inattentive.

"e. Where the defendant discovers the plaintiff's peril, and is prevented by his own antecedent negligence from avoiding the harm."

above decisions, the Kentucky court, in announcing its alignment with the cases holding that the doctrine will apply where the defendant "could", "should" or "might" have discovered a plaintiff's peril, was careful to say:

"This state (*at least where it is shown that the plaintiff was physically unable to extricate himself from the dangerous situation * *)* has adopted the more humane rule that the duty of a defendant to utilize the means at hand to avoid the injury begins when the plaintiff's peril might have been so discovered." (Italics provided) Coburn v. Louisville & N. R. Co., et al., 295 Ky. 530, 534, 174 S.W.2d 775, 778, (1943).

In the later cases we believe that the Kentucky court has held that unless plaintiff is in a position of "inextricable peril" actual knowledge of such peril is essential to the availability of the doctrine. Kentucky & West Virginia Power Co. v. Lawson, 240 S.W.2d 843, 846, 847 (Ky., 1951); B-Line Cab Co. v. Hampton, 247 S.W.2d 34, 37 (Ky., 1952); Saddler v. Parham, 249 S.W.2d 945, 949 (Ky., 1952); Underwood v. Gardner, 249 S.W.2d 950, 951 (Ky., 1952); Severance v. Sohan, 347 S.W.2d 498 (Ky., 1961). In Kentucky & West Virginia Power Co. v. Lawson, supra, the court said:

"It is difficult to over-emphasize the significance of the meaning of each word characterizing the doctrine. The defendant must have the *last* chance. If the plaintiff has an equal opportunity to avoid the accident by some act on his part up to the moment of its occurrence, then the defendant does not have the last chance * * *. (240 S.W.2d 846)

"* * * there are at least two reasons why the last clear chance instruction should not have been given. In the first place, appellant's driver did not have the *last* chance to avoid the accident. Until the moment of impact, appellee had as much chance to avoid the accident as

he did. She could have taken one step backward, or perhaps just stood still. Since appellee was not in a dangerous predicament *from which she was unable to extricate herself* (italics provided), she had a continuing series of opportunities to avoid injury. * * * She should not recover because as a factual matter her chance to avoid the accident was just as *last* as his." (240 S.W. 2d 847)

■ In Saddler v. Parham, supra, the court made reference to the apparent liberal application of the last clear chance doctrine in earlier cases and said, "However, in recent cases, the Court has placed limitations upon the application" (citing cases) (249 S.W.2d 947), and then clearly stated the rule we follow here, "However, it is held by the great weight of authority that it is only where the plaintiff is *physically unable* to escape from his peril that the defendant is held responsible on the ground that he *should have* discovered the peril. * * * It also is generally held that the last clear chance doctrine is not applicable where both parties are merely inattentive." (249 S.W.2d 949). In Underwood v. Gardner, supra, the court said, "The defendant must have the *last* chance. If the plaintiff has an equal opportunity to avoid the accident by some act on his part up to the moment of its occurrence, then the defendant does not have the last chance * * *." (249 S.W.2d 951). Such, also, is the holding in Severance v. Sohan, supra. The opportunity for plaintiff in this case to have extricated himself from peril was even greater than in Saddler v. Parham, where the pedestrian was walking with his back to the oncoming traffic. Here, only a slight turn of the head and a hurried step by plaintiff could have averted disaster. Under the most favorable view of the facts, it could not be found that when the defendant *should* have discovered plaintiff on the highway, he was in a position of inextricable peril.

We hold that it was error to instruct the jury on last clear chance. If defend-

ant, within 20 days of the announcement of this decision, supplements his application for relief by filing with the Clerk of this Court a request for new trial, the judgment of the District Court shall be vacated and the cause remanded for a new trial, otherwise the judgment of the District Court shall stand affirmed. (Section 2106, Title 28 U.S.C.A.)